**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mike GENTILE and George Marquart,**
**Defendants-Appellants.**

No. 73–2181.

United States Court of Appeals,
Fifth Circuit.

June 7, 1974.

Stephen K. Johnson, Gainesville, Fla. (Court-appointed), for Gentile.

Carol Wild Scott, Gainesville, Fla. (Court-appointed), for Marquart.

Catherine Wings Slocum, Palmetto, Fla., for defendants-appellants.

Robert L. Crongeyer, Jr., Asst. U. S. Atty., William H. Stafford, Jr., U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before GODBOLD, SIMPSON and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Mike Gentile and George Marquart were jointly tried and convicted under a three count indictment for distribution and conspiracy to distribute certain proscribed substances in violation of 21 U.

S.C. § 841(a)(1).[1] On appeal Gentile argues that, because this was a multiple defendant trial, the unrelated offense alleged in Count 3 of the indictment charging only Marquart was improperly joined under Rule 8(b)[2] with Counts 1 and 2, that even if there was proper joinder under 8(b) the trial court abused its discretion in denying a severance under Rule 14,[3] and that the trial court improperly refused to compel the prosecution to disclose where a confidential informer, the identity of whom was known, could be located. While Marquart, like Gentile, argues that the prosecution should have been compelled to disclose the location of the informer, he also argues that the court should have granted his motion for new trial. The motion for new trial is based on the prosecution's alleged suppression of an informer's testimony in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and related cases, or alternately on the discovery of new evidence, the informer's testimony. Concluding that the unrelated offense charged in Count 3 was misjoined with the first two counts in a multiple defendant trial, we reverse Gentile's conviction, but finding the other contentions meritless, we affirm as to Marquart.

While the testimony introduced at trial was conflicting in many particulars, the events giving rise to this case, viewed most favorably to the government, can generally be reconstructed as follows.[4] On October 23, 1972, Susan Jensen Parker, a confidential government informer, picked up Marquart while he was hitchhiking in Gainesville, Florida. According to Parker's testimony at trial, a conversation ensued between them in which Marquart stated that he was on his way to the library to make a contact for the purchase of a quantity of cocaine. He asked Parker if she was interested in purchasing any, and she replied that she was not, but she knew some persons that would be interested and would therefore accompany him to complete the transaction. After going to several places in an attempt to locate persons who sell drugs, Marquart and Parker went to 116 N.W. 9th Street, the residence of defendant Gentile and Nanny Crocker, a woman who shared

---

1. Section 841(a)(1) provides in part as follows:
   "(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

2. Rule 8(b) providing for joinder of multiple defendants provides as follows:
   "Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."
   It is well established that the more lenient standard of 8(a) providing for joinder of multiple offenses when only one defendant is tried is not applicable to a multiple defendant trial. United States v. Bova, 493 F.2d 33 (5th Cir., 1974); C. Wright, Federal Practice and Prcoedure, § 144 (1969).

3. Rule 14 provides as follows:
   "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

4. Four principal witnesses appeared and testified at trial. Susan Jensen Parker, a confidential informer, and Daniel Lane, a government agent, testified on behalf of the prosecution. Both Gentile and Marquart took the stand and testified as to their innocence. In addition to these four principal witnesses, several character witnesses testified for the defendants.

the house with Gentile, but the two apparently were not romantically involved.[5] Parker testified that, although she did not smoke marijuana, Marquart, Gentile and Crocker did so [6] while all four of them discussed the possibility of obtaining various illegal drugs. It appears that, while no narcotics were currently available, there was a possibility that drugs could be obtained later in the day, and according to Parker's testimony Gentile and Marquart were to get back together then.

Marquart and Parker left Gentile's place and went to Parker's motel room, where they met with Parker's husband, Deke Jensen, also a confidential informer, and Danny Lane, a government agent. Again, the possibility of obtaining narcotics appears to have been the primary topic of conversation. Thereafter, Marquart, Parker, Jensen and Lane left the motel room by car, supposedly to meet with Gentile. On the way they stopped to get gasoline and noticed Gentile walking by the station. Marquart got out of the car and, accompanied by Gentile, walked around to the back of the station. When they returned, all five persons drove, under the directions of both Gentile and Marquart,[7] to 406 N.E. 1st Avenue. Both Gentile and Marquart got out of the car and, although the testimony is conflicting as to whether only Marquart or both of them went inside,[8] when they returned Marquart had ten tablets of what was thought to be THC, but on analysis turned out to be PCP, which is also a federally proscribed substance.

On November 11, 1972, Lane was notified that Marquart had made arrangements for a sale of LSD. Lane testified that he and Marquart went to the house where Gentile and Crocker lived and there purchased the LSD. Significantly, only Marquart went inside to obtain the drug, and Lane testified that he did not know from whom the purchase was actually made or whether Gentile was even at home at the time of the purchase. Gentile testified that, not only was he not at the residence when the sale occurred, he had nothing to do with the narcotics, and Marquart testified that he purchased the LSD from Crocker. There is no evidence that Crocker conducted the transaction on Gentile's behalf. Subsequently, Marquart allegedly made an additional sale of LSD on November 14.

Based on these three transactions, the defendants were charged in a four count indictment. Specifically, Count 1 charged Gentile and Marquart with conspiring to distribute a controlled substance, the overt acts being the sale of PCP on October 23, 1972. Count 2 charged both defendants with the actual distribution of the PCP, Count 3 charged only Marquart with the distribution of LSD on November 11, 1972, and Count 4 charged Marquart with the distribution of LSD on November 14. Prior to trial Gentile moved for severance of Counts 3 and 4 on the basis of

---

5. While Gentile and Crocker lived in the same house together, they apparently lived in separate bedrooms, prepared their own meals and managed his or her affairs apart from the other.

6. Gentile denied that he smoked any marijuana. He testified that, while these persons were in the living of his house smoking marijuana, he was preparing a meal and getting cleaned up after a day's work for a construction company.

7. Gentile testified that the directions to this location were given only by Marquart, but Parker said that both defendants gave directions.

8. Gentile testified that, since he was riding in the front seat next to the door in a two-door automobile, he had to get out of the car to let Marquart out of the backseat. But while he got out of the car, he testified that he did not go inside the house where the PCP was obtained. Marquart also testified that Gentile did not go inside. While Parker testified that she saw Gentile go inside the house, Lane stated that he did not know if he went inside or not. His view of Gentile was obscured when Gentile walked behind some shrubbery located in front of the house.

misjoinder under 8(b), or for severance of defendants or offenses under Rule 14, and the trial court granted the motion as to Count 4 but not 3. Proceeding to trial on the first three counts, the jury found the defendants guilty as charged.

We turn first to Gentile's argument that the trial court improperly refused to either sever Count 3 from the trial below, or sever the defendants for trial. Because the offense in the third count of the indictment, in which only Marquart was charged, is so unrelated to the offenses charged in Counts 1 and 2, in which both defendants were charged, he argues that joinder of his and Marquart's trials under all three counts seriously prejudiced him. While recognizing that all defendants jointly tried need not be named in each and every count of the indictment, Gentile urges that the jury might have determined his guilt based merely on his association with Marquart or evidence that was admitted at trial against Marquart under Count 3.

Rule 8(b) outlines the standard governing permissible joinder of multiple defendants, providing that various defendants may be tried simultaneously "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." F.R. Crim.P. 8(b). The purpose of the rule is, in the interest of convenience and expediency, to encourage joint trials while at the same time limiting as much as possible the admission at trial of prejudicial evidence against a defendant. Moore, Federal Practice, ¶ 8.06[2], at 8–36 (1965).

■ Since the substantive offense covered by Count 2 of the indictment is plainly not the "same act or transaction" as that alleged in Count 3, our initial concern is whether these two offenses constitute a *series* of events within the meaning of the rule. Whether or not separate offenses are part of a "series of acts or transactions" under 8(b) depends in turn on the relatedness of the facts underlying each offense. King v.

United States, 355 F.2d 700 (1st Cir., 1966); Haggard v. United States, 369 F.2d 968 (8th Cir., 1966); C. Wright, *Federal Practice and Procedure*, § 144, at 232 (1969). While criminal acts of several defendants may be similar in nature, these acts cannot be properly joined in a multiple defendant trial if different facts and circumstances must be established to support the alleged violations. But when the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper. For example, if one person is charged with theft of goods in interstate commerce and a second person is charged with receiving goods that were stolen in interstate commerce, the two offenders may be joined for trial because the facts that must be established to support a violation of each offense are basically the same. They form a series of acts or transactions. *See* Kitchell v. United States, 354 F.2d 715 (1st Cir., 1965), cert. den., 384 U.S. 1011, 86 S.Ct. 1970, 16 L.Ed.2d 1032 (1966); Moore, Federal Practice, ¶ 8.06[2], 8–32 (1965). In this situation joinder of both offenses for trial fulfills the purpose underlying the rule because it avoids duplication of time and effort of both the prosecution and the courts and minimizes the prejudice to the defendants. The government has to prove and the court must listen to the evidence supporting the offenses only once, and the defendants are not prejudiced because essentially the same proof must be established with regard to each defendant whether or not they are jointly or severally tried. Moore, Federal Practice, ¶ 8.06[1] (1965).

■ This analysis illustrates that the criminal activity charged against Marquart in Count 3 of the indictment was not part of a "series of acts or transactions" under 8(b). The proof required to establish the sale of PCP on October 23, as alleged in Count 2, is entirely different from the proof required to establish the sale of LSD on November 11, as alleged in Count 3. The two transac-

tions occurred almost three weeks apart, the sales took place at different locations, the transactions involved different drugs, and the sources from whom Marquart procured the drugs were different. Moreover, severance of Count 3 would not frustrate the purpose of the rule because neither the prosecution nor the court would be significantly inconvenienced by a separate trial on this count, since each of them would be established only once based on different evidence. Severance of Count 3 would have fully protected Gentile from prejudicial evidence admitted to prove Marquart's guilt under Count 3.

Interestingly, this analysis is apparently in line with the district court's conclusion with regard to the fourth count of the indictment, alleging the sale by Marquart of LSD on November 14, because it granted Gentile's motion to sever this count, but yet declined to sever Count 3. We are unable to understand why the court concluded that the transaction alleged in Count 3 was sufficiently related to Counts 1 and 2 while Count 4 was not so related. Indeed, the only discernable connection present with Count 3 and absent with Count 4, and which was apparently relied on by the district court, was Gentile's residency at the house where Marquart obtained and sold the LSD, the offense alleged in the third count. But the facts are undisputed that another person lived in the house with Gentile who could just as easily have sold the drugs and that Gentile was not seen at this location by the informer when the transaction occurred. Gentile's testimony that he was not at home at the time of sale and that he had nothing to do with the LSD is uncontroverted. And according to Marquart's testimony, also uncontroverted and specifically corroborating Gentile's testimony, he purchased the LSD from Crocker. Furthermore, there is no evidence demonstrating that Gentile and Crocker were lovers, that Crocker sold the LSD on behalf of Gentile in his absence, or that they were incapable of conducting their own affairs apart from interfer-

ence by the other while residing in the house. While Gentile and Crocker lived in the same house, they lived in separate bedrooms and each prepared his or her own meals. The evidence in this record supports the conclusion that Crocker could have been dealing in drugs while Gentile was not. Gentile's mere residency in the house where the LSD was procured and sold, as alleged in Count 3, is not a sufficient link to Counts 1 and 2 to satisfy the series requirement of Rule 8(b).

This conclusion is firmly supported by our recent decision in United States v. Bova, 493 F.2d 33 (5th Cir., 1974). In Bova two defendants were jointly tried under a four count indictment for violating the narcotic laws. Bova and a co-defendant, Coccuzza, were jointly indicted under the first two counts for possession and distribution of heroin on or about August 31, 1972. Only the co-defendant Coccuzza was charged in the third and fourth counts for similar narcotics offenses that occurred eight days later. We held in Bova that these two transactions did not make up a series of events and consequently Counts 3 and 4, charging only Coccuzza, were improperly joined with Counts 1 and 2, charging both Bova and Coccuzza. Likewise, the transaction in the case at hand occurring on October 23rd involving both Gentile and Marquart is not sufficiently related to the November 11th transaction involving only Marquart to make out a series of acts or transactions within the contemplation of 8(b).

The government, however, urges that, even assuming these two transactions are not a series of transactions as required by 8(b), the conspiracy alleged in Count 1 sufficiently ties these two separate events together so as to make joinder proper. While it is true that the alleged existence of a conspiracy will frequently permit joinder of offenses when it would otherwise be impermissible, United States v. Banks, 465 F.2d 1235 (5th Cir., 1972), the conspiracy allegation in the instant case does not

remedy the discrepancy. For a conspiracy to properly tie separate events together so as to permit joinder of defendants, the substantive offenses alleged in the indictment must fall within the scope of the conspiracy. Gordon v. United States, 438 F.2d 858 (5th Cir., 1971); James v. United States, 416 F.2d 467 (5th Cir., 1969); United States v. Spector, 326 F.2d 345 (7th Cir., 1963). But the only overt acts alleged in the conspiracy count in the instant case concerned the distribution of PCP on October 23, the substantive offense alleged in the second count. No overt acts are set forth in the conspiracy count relating to Marquart's distribution of LSD on November 11, the third count of the indictment.

■ Moreover, while the indictment alleges that the conspiracy existed from October 23rd until the date of the indictment in December, the record does not disclose the existence of an enduring conspiracy organized for the continuous distribution of narcotics over such a period of time. Instead, the record supports the existence of a conspiracy only for the time it took to arrange and complete the sale of PCP to government agents as alleged in Count 2. Rather than demonstrating a continuing relationship between Marquart and Gentile, the record supports nothing more than the conclusion that their relationship culminated with the sale of PCP on October 23. Marquart's subsequent sale of LSD on November 11 was an individualized narcotics transaction concerning a different type of drug, occurring at a different place and obtained from a different source. Consequently we conclude that Marquart's sale. of LSD on November 11th does not fall within the scope of the conspiracy as established from the testimony introduced at trial.

■ Having reached this conclusion, we must now determine whether this failure of proof renders the initial joinder of offenses improper. The Supreme Court in Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960), recognized that, even though initial joinder of offenses prior to trial was based solely on the alleged existence of a conspiracy, the subsequent failure to prove the conspiracy at trial did not constitute misjoinder. In Schaffer seven defendants were jointly tried under a four count indictment alleging three substantive offenses and a conspiracy to commit the alleged offenses. At the close of the government's case the trial court dismissed the conspiracy count, but refused to dismiss the substantive counts based on misjoinder under 8(b). Since the trial court concluded that the defendants suffered no prejudice from the joint trial, the case was submitted to the jury and the defendants were found guilty.

On appeal the Supreme Court affirmed. Since the initial joinder was proper under 8(b), even though based solely on the unproved conspiracy, the Court viewed retrospectively the proceedings in the district court only to see if the court fulfilled its continuing duty under Rule 14 to sever the defendants or offenses should prejudice appear. The Court specifically refrained from establishing "a hard-and-fast formula that, when a conspiracy count fails, joinder is error as a matter of law." Since "no prejudice resulted from the joint trial," the convictions on the substantive counts were upheld.

In view of the principles enunciated in Schaffer, we turn to the instant case to see if prejudice has resulted. The government's asserted connection between both defendants' sale of PCP on October 23rd and Marquart's sale of LSD on November 11th revolved around Gentile's residency in the house where the LSD was obtained and sold to government agent Lane. The obvious impact this evidence must have had on the jury was to demonstrate the continuing relationship between Marquart and Gentile in support of the alleged conspiracy. But such an impression is simply factually insupportable. The uncontroverted evidence established that Gentile had nothing to do with the sale of LSD on November 11 and that the drug was pro-

cured from Gentile's housemate. While Gentile argued in the district court that he was not involved in the sale of PCP on October 23, or the conspiracy to commit that offense, the evidence of his residency at the house where Marquart's sale of LSD took place, which would have been inadmissible if the district court had either severed defendants or the offense alleged in Count 3, tended to inaccurately demonstrate to the jury a continuing relationship that was inconsistent with Gentile's denial of even being involved in the offenses alleged in Counts 1 and 2. Even though there was no factually demonstrable connection between Marquart and Gentile with regard to Marquart's sale of LSD on November 11, a connection between them was inaccurately conveyed to the jury that plainly might have influenced its determination of guilt concerning the offenses alleged in Counts 1 and 2. Sufficient prejudice appeared during the course of the trial from a failure to connect Gentile to the offense alleged in Count 3 that, when Gentile renewed his motion to sever at the conclusion of the government's case, the trial court abused its discretion in not granting the motion pursuant to its "continuing duty at all stages of the trial to grant a severance if prejudice does appear." Schaffer v. United States, *supra*, at 516; United States v. Johnson, 478 F.2d 1129 (5th Cir., 1973).

The defendants next argue that the government unlawfully suppressed evidence favorable to the defense by refusing to disclose that a confidential informer, Dwight Englebeck Jensen, was inclined to testify favorably for them. Since this person was present when the alleged sale of PCP took place and had knowledge of the circumstances and conversations surrounding the narcotics transaction, he more than anyone else could establish whether or not Marquart was entrapped. The government's failure to call this man as a witness, de-

fendants argue, could only mean that the government did not want his testimony, favorable to the defendants, disclosed. Alternately, they argue that the discovery of new evidence, Jensen's favorable testimony, after the defendants' trial is sufficient to warrant a new trial.

Prior to defendants' first trial, which ended in a mistrial, the trial court denied a motion requesting the disclosure of names and addresses of persons who were involved in the alleged transactions and any potential government witnesses. But during trial, defense counsel on cross-examination of the only government witness revealed that she had learned of the identity of the two confidential informers, Deke and Sue Jensen, who had participated in the events giving rise to the alleged offenses. The defense called neither of these persons as witnesses in the first trial, presumably because they could not be located. During closing arguments Marquart informed his counsel that one of the informers, Deke Jensen, had entered the courtroom, but, as Jensen later testified, he was told by the government that he was no longer needed and therefore left before closing argument was concluded.

After the first trial ended in a mistrial and while the second trial was pending, the defendants moved for disclosure of the full names and addresses of the confidential informers. The Assistant United States Attorney replied by affidavit that he was familiar with the testimony of these two persons and that such testimony "does not constitute evidence 'favorable'" to the defendants. Concluding that the informers were sufficiently involved in the events as to enable them to testify concerning crucial conversations and that the defendants already knew the identities anyway, the trial court partially granted the motion, requiring the government to disclose the informers' full names. Although the court denied the request for disclosure of the informants' addresses,[9] it indicat-

---

9. The defendants also complain that the trial court improperly refused to require the prosecution to disclose the addresses of the informers. Relying on United States v. Es-

ed that the informers would be made available at trial if so desired by the defense. The full names of the informers were disclosed as Sue Jensen Parker and Dwight Englebeck Jensen, but no request was made prior to trial on behalf of the defendants to require the presence of either informer.

At defendants' second trial Sue Parker, in addition to Daniel Lane, was called to testify on behalf of the government. Only during this second trial was it revealed that Dwight Jensen was currently incarcerated in the Duval County jail for writing checks without sufficient funds. When his whereabouts were discovered the defendants asked that a subpoena be issued requiring his presence at the trial, but the trial court denied the request as an "eleventh hour tactic by the defense." Even though each defendant took the stand and strenuously asserted his innocence, the jury found them guilty based on the testimony of Lane and Parker.

After the second trial, defense counsel met with the informer Dwight Jensen while he was in the Duval County jail. Counsel filed an affidavit stating that in this conversation Jensen told her that Marquart had been entrapped, that he did not think Marquart should have been prosecuted, and that it was because of these sentiments that the government refrained from calling him as a witness.

Feeling that if the truth of these averments was established the defendant might be entitled to a new trial, the trial court conducted a post-trial evidentiary hearing. At the hearing Dwight Jensen, among others, testified and denied that he had ever made such statements to Marquart's counsel. The trial court denied the motion for new trial.

After the evidentiary hearing, Marquart's counsel again met with Jensen and, unknown to Jensen, recorded the conversation that took place. Contending that Jensen's recorded testimony was favorable to the defendant, that this testimony was unlawfully suppressed by the prosecution and that its subsequent discovery mandated a new trial, counsel again moved for a new trial. The trial court listened to the tape in the presence of defendant Marquart and his counsel and denied the motion for new trial. It is in this posture that the case is before this court.

■ It is plain under Brady v. Maryland, *supra*, that the prosecution must disclose to the accused evidence favorable and material to his defense, but on this record we are unable to conclude that the prosecution unlawfully suppressed any evidence. Jensen testified under oath at the post-trial evidentiary hearing, and his testimony revealed nothing favorable to the defendants or inconsistent with the government's case against Marquart. Furthermore, Jensen's supervisor, Robert M. Ginley, testified that Jensen had never expressed any reservations about Marquart's involvement or guilt with regard to the offenses for which he was tried below. Although Jensen stated, according to Ginley, some reservation about Marquart's involvement in another offense apart from those charged here, we agree with the district court that such information would have no bearing on this case. Since the evidence revealed at the post-trial hearing was not favorable to the defendants, it cannot be plausibly argued that such evidence was suppressed in violation of *Brady*.

cobedo, 430 F.2d 603 (7th Cir., 1970), the district court refused to require disclosure of the addresses because the defendants had sufficient information to subpoena the informants for trial. While the government is not required to actually produce the informer at trial, once the identity is revealed, we think the better practice is to require disclosure of the last known residence of the informer or to provide reasonable assistance

in locating him. United States v. Ortega, 471 F.2d 1350 (2nd Cir., 1972). But in view of counsel's failure to subpoena Jensen until the middle of the second trial, coupled with the ultimate disclosure of Jensen's testimony at the post-trial evidentiary hearing, which did not prove favorable to defendants, the court's failure to require disclosure of the informants' addresses is not reversible error.

We have listened closely to the tape recording of the conversation between Marquart's counsel and Jensen made after the evidentiary hearing, but are still not persuaded that *Brady* has been violated. Jensen mentions in the recorded conversation that he thought Marquart "deserved a break," but nothing on the tape demonstrates that Jensen himself thought Marquart was entrapped or that he would relate facts and circumstances to show Marquart was entrapped. Jensen suggests that his testimony "might go more than . . . [he] had gone" had the questions asked at the hearing been phrased differently, and that his testimony might be "more helpful" to the defendants after his personal difficulties with law enforcement agencies were ultimately resolved. But at most this testimony is ambiguous. Indeed it is difficult to attribute much if any significance to such casual statements made while he was bound by no oath, and when previously confronted with specific questions concerning the possibility of Marquart's entrapment, the revealed nothing helpful to defendants.

With regard to Marquart's contention that he is entitled to a new trial based on newly discovered evidence, we do not believe he has satisfied the applicable criteria. As Judge Wisdom noted in United States v. Jacquillon, 469 F.2d 380 (5th Cir., 1972):

> "In order to justify a new trial, the rule is that the evidence must in fact be newly discovered and that the movant must have exercised due diligence in discovering the evidence. It must not be merely cumulative or impeaching. Furthermore, the new evidence must be material and be such that it would probably produce an acquittal in a new trial."

*Id.* at 388. We are simply unable to say that Jensen's testimony as disclosed in the record of the post-trial hearing and the tape recording would probably convince a jury of Marquart's innocence.

The district court's judgment as to Marquart is affirmed, but as to Gentile, the judgment is reversed and remanded for a new trial.