**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Frederick BOWER, Defendant-Appellant.**

No. 77-5336.

United States Court of Appeals, Fifth Circuit.

June 19, 1978.

Rehearing and Rehearing En Banc Denied Aug. 23, 1978.

---

Ray Sandstrom, Fort Lauderdale, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., James E. McDonald, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before JONES, RONEY and TJOFLAT, Circuit Judges.

RONEY, Circuit Judge:

Defendant Bower was convicted of possession with intent to distribute and distribution of cocaine, and unlawful possession of a firearm during the commission of a federal felony. His convictions came about largely through the efforts of a paid Government informer. On this appeal defendant seeks reversal of his convictions, arguing: (1) there was no foundation for inclusion in the indictment of a count charging a federal firearms violation; (2) the Government's failure affirmatively to proffer the paid informer for a pretrial interview with defendant violated defend-

ant's sixth amendment right to compulsory process; (3) the trial court's refusal to compel disclosure of the informer's address and its refusal to allow defendant to inquire into the amount of compensation paid the informer for previous cases violated defendant's due process right to a fair trial; and (4) entrapment was established as a matter of law. Finding no error, we affirm.

## I. *Background*

The cocaine transaction leading to defendant's convictions was negotiated by Richard Clegg, a paid Government informer. In early April 1976 Clegg moved into the apartment above defendant. The two became acquainted, and Clegg soon began requesting defendant to supply Clegg with narcotics. After rejecting Clegg's overtures several times, defendant agreed to supply a quantity of cocaine to an Atlanta buyer. A deal was struck, and Clegg and Drug Enforcement Administration [DEA] agent Sylvestri, posing as the buyer, met with defendant at the latter's apartment to make the exchange. After delivering the cocaine to Sylvestri, defendant was placed under arrest. A .22 caliber automatic pistol was found inside defendant's waistband, concealed by his shirttail.

## II. *Federal Firearms Violation*

The · original two-count indictment charged defendant with possession with intent to distribute and distribution of 116 grams of cocaine, both in violation of 21 U.S.C.A. § 841(a)(1). A superseding indictment added Count Three, which charged defendant with possession of a firearm during the commission of a felony in violation of 18 U.S.C.A. § 924(c)(2). Defendant's motion to dismiss Count Three was referred to a United States Magistrate, who recommended the motion be granted. The district court, however, denied the motion, and trial commenced on all three counts. At the close of the Government's case and at the close of the entire case, defendant moved for judgment of acquittal. The district court denied the motion as to the first two counts and reserved judgment as to

Count Three. After the jury had returned a verdict of guilty on all three counts, the district judge sentenced defendant to concurrent terms of two years imprisonment with three years special probation on the cocaine counts and granted defendant's renewed motion for judgment of acquittal as to Count Three, the federal firearms count.

■ Defendant maintains that the district court committed reversible error in allowing Count Three to go to the jury. Count Three was based on 18 U.S.C.A. § 924(c)(2), which in pertinent part provides:

> (c) Whoever . . .
>
>   (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States,
>
> shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years.

Congress modified the verb "carries" with the adverb "unlawfully" in order to avoid imposing additional penalties on persons, such as policemen, who commit federal felonies while lawfully carrying firearms. *United States v. Ramirez,* 482 F.2d 807 (2d Cir.), *cert. denied sub nom., Gomez v. United States,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973).

Section 924(c)(2) is violated only if the act of carrying the firearm is in and of itself a violation of federal, state, or local law. *United States v. Rivero,* 532 F.2d 450 (5th Cir. 1976); *United States v. Soria,* 519 F.2d 1060 (5th Cir. 1975); *United States v. Garcia,* 555 F.2d 708 (9th Cir. 1977); *United States v. Howard,* 504 F.2d 1281 (8th Cir. 1974).

The Government has admitted from the outset that defendant did not affirmatively use the firearm during the cocaine transaction. Thus, defendant did not violate 18 U.S.C.A. § 924(c)(1), which makes it unlawful to *use* a firearm to commit a federal felony.

The entire episode occurred in defendant's residence. Under § 790.25(3)(n), Florida Statutes, it is not unlawful to carry a gun without a license in one's own home, even if concealed. *See Peoples v. State,* 287 So.2d 63 (Fla.1973); *French v. State,* 279 So.2d 317 (Fla.Dist.Ct.App.1973). Relying upon this statute, defendant argues, and the magistrate held, that even if the Government proved defendant lacked a license, his possession of the gun was lawful and therefore could not, as a matter of law, form the basis of a conviction under § 924(c)(2). Defendant urges that the effect of allowing Count Three to go to the jury was to allow the jury to consider otherwise inadmissible evidence of defendant's possession of the gun. This error, argues defendant, requires reversal. A review of Florida law, however, shows that under the undisputed facts of this case the Government was justified in charging defendant with violation of § 924(c)(2), and the district court did not err in submitting the count to the jury.

■ Defendant's analysis of Florida's gun licensing statutes is correct: under § 790.25(3)(n) one need not obtain a permit to carry a firearm in one's own home. *Peoples v. State,* 287 So.2d 63 (Fla.1973). The Government proves its case, however, if it can show that defendant's possession of the gun violated *any* firearms law. *E. g., United States v. Rivero,* 532 F.2d 450 (5th Cir. 1976); *United States v. Howard,* 504 F.2d 1281 (8th Cir. 1974).

Another section of the Florida Statutes, § 790.07(2), provides: "Whoever, while committing or attempting to commit any felony or while under indictment, . . . carries a concealed firearm is guilty of a felony." This statute contains no exception for felonies committed in the home. Although certain types of crimes are excluded from the application of this section, narcotics violations are not.

The following crimes are excluded from application of [§ 790.07]: Antitrust violations, unfair trade practices, restraints of trade, nonsupport of dependents, bigamy, or other similar offenses. Fla.Stat. § 790.07(3). "Other similar offenses" does not include narcotics violations. *See Stovall v. State,* 272 So.2d 866 (Fla.Dist.Ct.App.1973).

Florida courts have not adjudicated whether carriage of a concealed firearm during the commission of a felony within one's own dwelling house is exempted by any Florida law. It would appear that § 790.25(3)(n), which excepts the registration requirements for "a person possessing arms at his home," does not apply to firearm violations of § 790.07. *See* § 790.-25(2)(a). We doubt the Florida courts would construe the Florida statutes to provide any exception to § 790.07 other than those within the section itself.

Defendant admitted carrying a concealed .22 caliber pistol during the narcotics sale, a clear violation of Florida Statutes § 790.07(2). His possession of the concealed weapon was therefore "unlawful" within the meaning of 18 U.S.C.A. § 924(c)(2).

Since the Government has not appealed the validity of the district court's judgment of acquittal on Count Three, we do not reach that issue. *See United States v. Boyd,* 566 F.2d 929 (5th Cir. 1978). We hold only that the district court did not err in denying defendant's earlier motions for judgment of acquittal and allowing the firearms count to go to the jury.

### III. *Alleged Fifth and Sixth Amendment Violations*

Defendant alleges violations of his sixth amendment right to compulsory process and his fifth amendment right to a fair trial. In response to defendant's motion to compel disclosure of the name and address of the Government's informant, the Government admitted Richard Clegg's identity, but moved for a protective order denying discovery of his current address. The court granted the Government's motion, but ordered the Government to make Clegg available for a pretrial interview with defend-

ant. The court's order specifically provided that

> prior to trial the government shall make the confidential informant, Richard Clegg, available for interview by the defendant in a safe place outside the immediate presence of a representative of the government.

Because the Government did not affirmatively tender Clegg to defendant for interview prior to trial, the court held the pretrial order had been violated and refused to allow the Government to call Clegg as a witness.

■ Defendant argues that his sixth amendment right to compulsory process was violated because the Government's failure affirmatively to proffer the informant for interview deprived him of his opportunity to develop the facts and circumstances surrounding the informant's involvement in the case. But at no time, either before or during trial, did defendant seek an interview with Clegg or attempt to subpoena him for trial. Defendant cannot now argue that his constitutional rights were violated. It is not alleged that the Government failed to disclose any *Brady* material in this case. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1962).

■ Defendant also charges that the trial court violated his due process right to a fair trial by refusing to compel disclosure of informant Clegg's address and by limiting testimony concerning Clegg's compensation to the instant case. A trial court faced with a motion to compel disclosure of a confidential informant can call on no fixed rule to guide its decision. Rather, in each case the court must balance the benefits to the defendant of disclosure against the resulting harm to the Government. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Fischer,* 531 F.2d 783 (5th Cir. 1976). When the defense is entrapment, this balancing test generally requires disclosure of the informer's identity since the defendant's freedom

may rest upon allegations which the informer is in a unique position to affirm or deny. *United States v. Gomez-Rojas,* 507 F.2d 1213 (5th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

■ In the instant case, the court properly balanced the competing interests and arrived at a satisfactory solution. Noting that defendant was armed when arrested, the court justifiably denied disclosure of Clegg's address when Clegg expressed concern for his personal safety. *See United States v. Hansen,* 569 F.2d 406, 410 (5th Cir. 1978); *United States v. Toombs,* 497 F.2d 88, 94 (5th Cir. 1974).

To protect defendant's right to prepare his defense, the court granted defendant the right to interview Clegg at any time before trial. Defendant could have used this right to interrogate Clegg and, if pleased with the results, to serve him with a subpoena to appear as a defense witness. Indeed, had defendant desired to subpoena Clegg for appearance at trial, as he now urgently contends, he could have served Clegg through the office of the United States Attorney. Under these circumstances, the court's failure to require disclosure of Clegg's address is not reversible error. *See United States v. Gentile,* 495 F.2d 626, 633 n. 9 (5th Cir. 1974).

■ No error occurred in the court's refusal to allow defendant to inquire on cross-examination of agent Sylvestri into amounts paid Clegg for work on previous cases. The agent's testimony was limited to compensation for the present case. Clegg's compensation for earlier work was not relevant to the facts testified to by Sylvestri on direct examination.

## IV. *Entrapment*

Defendant contends the evidence established an entrapment as a matter of law. In support of this claim, defendant relies primarily on his own trial testimony that he had agreed to participate in the criminal

enterprise in a moment of extreme depression. Defendant had recently turned 30 and, reflecting upon an uneventful past and contemplating a similar future, had decided to return to college and finish his education. Unfortunately, a year of voluntary unemployment had so depleted his personal finances that he could not return to school without working at least part time. Having hoped to be able to focus his undivided attention on his studies, defendant began to recognize Clegg's proposals as an opportunity to finance his schooling. His depression at this time was heightened by the fact that he and his girlfriend had recently severed their long-standing relationship. Consequently, although he had repeatedly rejected Clegg's earlier entreaties, he could no longer resist the temptation of the promised "exorbitant gains" to be reaped from a single cocaine sale.

Since Clegg did not testify at trial, defendant's account of Clegg's repeated attempts to persuade defendant to procure narcotics is uncontradicted. The record nevertheless contains evidence weighing against the contention that defendant was "an innocent seduced by a government agent." *Pierce v. United States,* 414 F.2d 163, 165 (5th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). Defendant admitted that he saw the sale as a source of "easy money" and that he expected to make a $1,000 profit on the transaction. He purchased the cocaine from a nongovernment source who trusted defendant enough to defer payment until defendant had resold the drug. Indeed, while negotiating the actual exchange, defendant assured DEA agent Sylvestri that he could handle Sylvestri's future cocaine needs if the amounts were not too large. Both agent Sylvestri and defendant testified that during the transaction, defendant received a telephone call from his source. Defendant interrupted his telephone conversation to ask Sylvestri if he was interested in buying another four ounces of cocaine. When the DEA agent expressed interest,

defendant requested his source "not to lock up the other four" and offered to produce the additional cocaine for Sylvestri in 30 minutes.

On this evidence, the trial court did not err in submitting the entrapment issue to the jury. The crucial issue in entrapment cases is whether the defendant was predisposed to commit the crime. *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1975); *United States v. Gomez-Rojas,* 507 F.2d 1213 (5th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). The Government's provision of aid, incentive, and opportunity for commission of the crime amounts to an entrapment only if it appears that the defendant has done that which he would never have done were it not for the inducement of Government operatives. *United States v. Groessel,* 440 F.2d 602, 606 (5th Cir.), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); *see United States v. Puma,* 548 F.2d 508 (5th Cir. 1977). Although the record contains evidence upon which a jury might conclude that defendant was induced by a Government informer to commit a crime that he was not otherwise predisposed to commit, the evidence was not "so overwhelming that it was 'patently clear' or 'obvious' that [defendant] was entrapped as a matter of law." *United States v. Groessel,* 440 F.2d 602, 606 (5th Cir.) (and cases therein), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971).

AFFIRMED.