UNITED STATES of America,
Plaintiff-Appellee,

v.

Dominic RISI, Defendant-Appellant.

No. 78–5750
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 5, 1979.

Rehearing Denied Nov. 13, 1979.

---

* Rule 18, 5 Cir., *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Roy E. Black, Miami, Fla., for defendant-appellant.

Stephen B. Gillman, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before CLARK, GEE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellant Dominic Risi appeals from his jury convictions for possession with intent to distribute cocaine, distribution of cocaine, conspiracy to distribute cocaine, and unlawfully carrying a firearm during the commission of a federal felony. 21 U.S.C.A. §§ 841(a)(1), 846, 18 U.S.C.A. § 924(c)(2). He raises three challenges to his convictions which we reject seriatim.

Appellant was indicted along with codefendants Kenneth Gibson and Richard Caplin for the three cocaine violations and separately for the firearm offense. Viewed most favorably for the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) the facts relevant to our decision may be stated briefly.

At trial, an undercover agent with the Drug Enforcement Administration (DEA), testified that he had arranged to purchase cocaine through Gibson from Gibson's source, "Rick." The undercover agent met Gibson at a motel in Miami, Florida on October 20, 1978 to conclude the purchase. Gibson, the undercover DEA agent who had made the arrangements, and a second undercover DEA agent went to the apartment of Caplin. Gibson and the DEA agents went inside and met Caplin and Appellant. Negotiations began and Caplin produced one-half pound of cocaine; one of the DEA agents tested and weighed the cocaine and offered to purchase two pounds. Appellant, who had been identified by Caplin as his partner, directly participated in the negotiations for additional cocaine. During these negotiations, Appellant's complicity in both cocaine transactions was established. At this point, the DEA agents abandoned their cover and arrested Gibson, Caplin and Appellant. When Appellant was searched, a .38 caliber revolver was found concealed on his person. The first DEA agent was wearing a wireless transmitter and these discussions were recorded. The tape recordings were played for the jury and the DEA agents also testified.

Appellant testified that he was at Caplin's apartment only to sell the revolver and

denied participating in the sale of the initial one-half pound of cocaine. He further testified that the first undercover DEA agent forced him to join the later discussions concerning the additional cocaine.

Appellant's initial challenge is based on the right to effective assistance of counsel. At trial, Appellant was represented by the same firm of attorneys who represented Gibson and Caplin. By the time of Appellant's trial, Gibson and Caplin had pled guilty and were awaiting sentencing. After his conviction, Appellant retained new counsel and moved for a new trial based on his trial counsel's refusal to call Gibson and Caplin as defense witnesses. In his motion, Appellant alleged that he requested that his trial counsel subpoena Gibson and Caplin and that his trial counsel refused, despite his assertion that they were willing to testify. He further alleged that his trial attorney refused to call the two codefendants because to do so might jeopardize their chances for lenient sentences.

Appellant contends that the conflict of interest which existed as a result of his trial attorney's joint representation of the three codefendants deprived him of effective assistance of counsel. We cannot agree.

 The mere fact of joint representation, even at the trial itself, does not establish a conflict of interest. An accused, whether represented by appointed or retained counsel, is deprived of his Fifth and Sixth Amendment right to effective assistance of counsel, even in the absence of a showing of prejudice, when there is an *actual* conflict of interest. *United States v. Medel*, 592 F.2d 1305 (5th Cir. 1979); *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978). *See also Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Stephens v. United States*, 595 F.2d 1066 (5th Cir. 1979). The actual conflict must be demonstrated; mere speculation

based on joint representation is not sufficient. There must be a significant divergence in the interests of the jointly represented persons. This is not a case in which any actual conflict has been demonstrated. Appellant neither alleges nor argues that his defense was inimical to his codefendants' defense. He argues only that his codefendants' testimony would corroborate his own testimony. Generally, when the testimony of jointly represented codefendants is largely corroborative, repetitive or serves the same purpose, there is no conflict of interests upon which a claim of ineffective assistance of counsel may be based. *See United States v. Medel*, 592 F.2d at 1310–11 and cases discussed therein. There being no actual conflict between Appellant's interests and his codefendants' interests, Appellant's effective assistance of counsel challenge fails. Consequently, the District Court did not abuse its discretion in denying the motion for a new trial.

Appellant's second challenge centers on the closing argument of the Government's counsel. During his summation, defense counsel rhetorically questioned why the prosecutor had not cross-examined the Appellant more vigorously about the specifics of the cocaine negotiations.[1] In his closing argument, the Government's counsel attempted to rebut by saying:

> The defense attorney stood here and made a big thing about my not cross-examining on what you already heard. The reason I didn't do that, ladies and gentlemen, is because he had already perjured himself enough. I wasn't going to ask him to do more. The tape speaks for itself and you heard the agents testify.
>
> · · ·

Defense counsel immediately requested and was granted a sidebar conference. He argued that the use of the word "perjured" was particularly condemning and mandated a mistrial. The defense motion for mistrial

---

1. Defense counsel argued:

> Why wasn't the witness cross-examined as to the conversations that took place? Ask the government in your own mind that question. Why did the government studiously avoid that entire area? You answer that

question as to why. What did they cross-examine this witness on? His beard. His no beard. [sic]. His facial hairs. Whose hair was rumpled. Whose hair was not rumpled. Who cares? Who gives a darn if his hair was rumpled or not. What does that mean?

was denied; the defense objection was sustained and the jury was immediately given a cautionary instruction.[2]

 This Court has formulated a test for determining when a prosecutor's closing argument is sufficiently prejudicial to deny defendant a fair trial: "Does the prosecutor's argument, taken as a whole in the context of the entire case, prejudicially affect substantial rights of the defendant?" *United States v. Corona*, 551 F.2d 1386, 1388 (5th Cir. 1977). Appellant argues that, in the above quoted remark, the prosecutor claimed that she knew Appellant was a perjurer and any further questioning would elicit only more perjury. As a general rule, neither the prosecutor nor the defense counsel may express an opinion of a witness's credibility. *United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978); *Hall v. United States*, 419 F.2d 582, 587 (5th Cir. 1969). However, there is a distinction between an argument which suggests a personal belief and private information and an argument which merely intends to show the witness's testimony is not supported, but rather is contradicted, by the other evidence. The Government asks us to conclude that the argument here was of the latter variety. Rather convincingly, the Government contends that what the prosecutor really intended to argue was that the tape recordings and the DEA agents' testimony clearly demonstrated that Appellant perjured himself when he testified, a point clear to everyone in the courtroom who had heard the tape recordings. Although not condoned, such remarks have been held not to be reversible error when the prosecutor's assertion that a defendant had testified falsely was merely a suggestion that the jury should draw that conclusion from all the evidence in the case, so long as there was no implication that the prosecutor had private information supporting his disbelief of the defendant. *United States v. Siegel*, 587 F.2d 721, 727 (5th Cir. 1979). Taken in

the context of the closing arguments here, the prosecutor's comment was intended to emphasize the discrepancies between Appellant's testimony and the other evidence. While we do not condone such prosecutorial overzealousness, we will not reverse these convictions because of the remark. *Cf. United States v. Wilson*, 578 F.2d 67, 71–72 (5th Cir. 1978).

Even assuming *arguendo* that this single remark was error, we would hold it harmless in light of the overwhelming evidence of guilt and the District Court's immediate cautionary instruction. *See United States v. Warren*, 594 F.2d 1046, 1049 (5th Cir. 1979); *United States v. Handly*, 591 F.2d 1125, 1131–32 (5th Cir. 1979); *United States v. Allen*, 588 F.2d 1100, 1108 (5th Cir. 1979). *United States v. Restrepo-Granda*, 575 F.2d 524, 529–30 (5th Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978); *United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978).

Appellant's third and final appellate challenge involves his conviction for unlawfully carrying a firearm during the commission of a federal felony. 18 U.S.C.A. § 924(c)(2). He urges that the Government failed to prove that his possession was "unlawful."

 Section 924(c)(2) is violated only if the act of carrying the firearm is, in and of itself, a violation of federal, state, or local law. *United States v. Bower*, 575 F.2d 499, 501 (5th Cir.), *cert. denied*, 439 U.S. 983, 99 S.Ct. 572, 58 L.Ed.2d 654 (1978). Section 790.07(2) of the Florida Statutes provides, in part: "[w]hoever, while committing or attempting to commit any felony . . . carries a concealed firearm is guilty of a felony." In *Bower* this Court concluded that a violation of Section 790.07(2) supplies the element of unlawfulness required to establish a violation of 18 U.S.C.A. § 924(c)(2). The District Court properly

---

2. The District Court instructed:

Ladies and gentlemen of the jury, I am going to instruct you to disregard the last comment of Government counsel. It is improper for attorneys to comment either on their person-

al belief in the veracity or lack of veracity of a witness, and can comment on inconsistencies but not observations on whether or not somebody is telling the truth or not telling the truth. So please disregard that.

instructed the jury on this point of law.[3] The unlawfulness of Appellant's possession of the .38 caliber revolver was thus established and the District Court properly denied his motion for judgment of acquittal. Appellant's efforts to have us reexamine *Bower* are labors lost. We deem ourselves bound by the *Bower* decision and cannot reexamine it absent intervening authority of the *en banc* Court or the Supreme Court. *See United States v. Evans*, 572 F.2d 455, 477 n.23 (5th Cir.), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978).

AFFIRMED.

---

**3.** The District Court instructed:

> The word "unlawfully" as used in this statute means in violation of some separate law or ordinance, apart from the felony during which the firearm was carried.
>
> Under Florida Law whoever, while attempting to commit any felony, displays, uses, threatens, or attempts to use any firearm or carries a concealed firearm is guilty of a felony of the second degree.