**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald HUGHES, Defendant-Appellant.**

No. 80–5550.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Oct. 5, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Ronald H. Brimmell, Maurice Graham, Fort Lauderdale, Fla., for defendant-appellant.

Bruce A. Zimet, Linda Hertz Collins, Asst. U. S. Attys., Miami, Fla., Carolyn Gaines, Washington, D. C., for plaintiff-appellee.

** Judge of the U.S. Court of Claims, sitting by designation.

Before HILL, Circuit Judge, SMITH **, Judge, and HENDERSON, Circuit Judge.

HENDERSON, Circuit Judge:

On November 14, 1979, Special Agent Gene Bachman of the Drug Enforcement Administration (hereinafter referred to as "DEA") and Ken, a confidential informant, arranged by taped telephone conversations to buy one kilogram of cocaine from the appellant, Donald Hughes. Hughes agreed to consummate the sale that same day at a local motel. While Bachman waited for Hughes in the parking lot, Ken went inside and registered for a room. After Hughes arrived, the three men retired to the room to discuss the terms of the sale. Hughes then left to obtain the cocaine, returning a short time later with Michael Mann, who was carrying a cellophane bag containing a white powdery substance. Hughes manipulated the cellophane bag in order to show Ken and Bachman an unusually large "rock" of cocaine.[1] Both Bachman and Ken examined the contents of the bag and Ken, after tasting the powder, indicated his approval. Bachman and Hughes then left the room to get the purchase money from Bachman's car. When the two reached the parking lot, agents arrested Hughes. Bachman returned to the hotel room, seized the cocaine and arrested Mann, who had remained in the room with Ken and the cocaine. Mann subsequently told a DEA agent that Ken had taken some of the cocaine. Upon learning that he would have to be searched, Ken handed over the crushed remains of the cocaine "rock." Ken did not testify for the government at trial, but was called as a defense witness for purposes of impeachment. Hughes' defense is based on his own testimony that Ken contacted him in advance and duped him into believing that Ken and Hughes would be partners in a scheme to swindle Bachman by selling him mannitol, apparently a sugar substance, instead of cocaine. The appellant contends

1. A cocaine "rock" is a solid lump of cocaine powder and is usually of a higher purity than the cocaine surrounding it.

that Mann brought mannitol into the room and that Ken must have switched it for cocaine in an effort to place the blame on him.[2]

Following a jury trial in the United States District Court for the Southern District of Florida, Hughes was found guilty of conspiracy to distribute cocaine, 21 U.S.C. § 846, and distribution of cocaine, 21 U.S.C. § 841(a)(1), but was acquitted of possession with intent to distribute cocaine. Having found no reversible error, we affirm his convictions.

■ Hughes initially claims that the admission of the cocaine into evidence was error because there was an interval between the time when he and Agent Bachman left the alleged cocaine in the hotel room in the possession of Ken and Mann and when the other agents appeared on the scene. The appellant argues that Ken switched real cocaine for the imitation substance while Hughes was being arrested. The trial judge was correct in admitting the cocaine, despite the fact that Ken obviously could not resist taking a little for himself while Agent Bachman was out of his presence. Any break in the chain of custody caused by Bachman's absence goes to the weight of the evidence and not to its admissibility. *United States v. Colatriano*, 624 F.2d 686 (5th Cir. 1980); *United States v. Henderson*, 588 F.2d 157 (5th Cir.), *cert. denied*, 440 U.S. 975, 99 S.Ct. 1544, 59 L.Ed.2d 794 (1979). We need only determine whether there was sufficient evidence to support a finding of a reasonable probability that the cocaine had not been altered in any important respect from its original condition. *United States v. Albert*, 595 F.2d 283 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979). *United States' v. Stewart*, 579 F.2d 356 (5th Cir.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978); *Gallego v. United States*, 276 F.2d 914 (9th Cir. 1960). Circumstantial evidence is admissible to show a connection between physical evidence and the defendant, *United States v. Soto*, 591

F.2d 1091 (5th Cir.) *cert. denied*, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 *cert. denied; Pardon-Gonzalez v. United States*, 444 U.S. 845, 100 S.Ct. 89, 62 L.Ed.2d 58 (1979), and, on review, we must accept the fact finder's version of the evidence unless it is clearly erroneous. *United States v. Jonas*, 639 F.2d 200 (5th Cir. 1981); *United States v. Duckett*, 583 F.2d 1309 (5th Cir. 1980). While the record discloses a change in the quantity of cocaine (thanks to Ken's desire to own a pet cocaine "rock"), there is no indication of any substitution of the substance itself. There is ample evidence to support the conclusion that the white powdery material which was in the plastic bag before Bachman left the room was the same substance that was in the bag upon his return.

■ Hughes also assigns as error the trial court's refusal to admit the testimony of a police officer and a parole officer to prove that Ken, the informer, was under investigation. Rule 609 of the Federal Rules of Evidence provides for the impeachment of a witness because of a prior conviction but evidence of arrests or investigations is not admissible. *United States v. Hodnett*, 537 F.2d 828 (5th Cir. 1976); *United States v. Alvarado*, 519 F.2d 1133 (5th Cir.), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1107, 47 L.Ed.2d 315 (1975). It was therefore proper to exclude this proffered evidence.

■ Hughes next challenges the trial court's limitation of his examination of Ken. Hughes called Ken as a defense witness for the sole purpose of impeachment. *See* Fed.R.Evid. 607. After having Ken declared a hostile witness, Hughes conducted a vigorous attack on his character. The district court sustained objections to several questions on the grounds that they were irrelevant. The appellant now enumerates as error the trial judge's handling of the entire examination.

We need not delineate each of the rulings in order to decide the issue presented. Hughes was generally successful in his

---

**2.** Ken was paid $1,500.00 for his efforts as an informer. Hughes' theorizes that Ken substituted cocaine valued at $62,500.00 for mannitol in order to earn his fee.

avowed purpose. He showed that Ken was a paid informer, that he was on parole when he assisted the government in this case, that he had probably received favorable parole consideration because of his cooperation in drug cases, and that he was a convicted felon. Perhaps the most damaging effects of the cross-examination were the discrepancies in Ken's testimony concerning the number of his prior convictions and his status as a parolee at the time of Hughes' arrest. Ken corrected these misstatements only when confronted with evidence of their falsity. Record, vol. VI, at 269–336. A review of Ken's testimony as a whole reveals that Hughes was permitted to make the points which he now complains were denied him. As stated in the appellant's brief, "Appellant's counsel during the trial amply demonstrated the informant's possible bias and his motive to frame the Appellant and his motive to testify on behalf of the Government." Appellant's Brief at 24. Since the jury clearly had sufficient information to appraise the bias and motives of the witness, any restrictions imposed by the trial judge were not prejudicial to the appellant. Fed.R.Crim.P. 52(a); *United States v. Salsedo*, 607 F.2d 318 (9th Cir. 1979); *see United States v. Heller*, 625 F.2d 594 (5th Cir. 1980).

The appellant also maintains that the district court erred in sustaining the government's motion *in limine* to prohibit questions concerning Ken's address. We begin by noting that since the appellant did not object to either the motion or the ruling, Record, vol. VI, at 268, we must review the record as a whole only to determine whether the court's ruling was plain error affecting substantial rights. Fed.R.Crim.P. 52(b); *United States v. Bibbs*, 564 F.2d 1165 (5th Cir. 1977), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978). In view of the facts of this case, we cannot find that requisite plain error. This is not a situation in which the informant's identity or whereabouts were unknown; Ken was made available to the defense for an interview. *Cf. Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Ayala*, 643 F.2d 244 (5th Cir. April 20, 1981); *Ashley v. Wainwright*, 639 F.2d 258 (5th Cir. 1981). Moreover, he did not testify for the government; he was called as a hostile defense witness. When confronted with a motion to disclose the address of an informer, a trial judge can call on no fixed rule to guide his decision but must instead balance in each case the benefits to the defendant of disclosure against the resulting harm to the government. *Roviaro v. United States, supra; United States v. Bower*, 575 F.2d 499 (5th Cir.), *cert. denied*, 439 U.S. 983, 99 S.Ct. 572, 58 L.Ed.2d 654 (1978). While there was no mention here of possible harm to Ken as a result of his testimony, "It is no secret that informers whose identities are revealed prior to the trial are often 'among the missing' when the trial date finally arrives." *United States v. Hernandez*, 608 F.2d 741 (9th Cir. 1979). Thus, in almost every drug case involving an informant, the government has *some* interest in non-disclosure. Here, there was no advantageous purpose to serve the appellant in requiring the disclosure of Ken's address. The only possible benefits of this information to Hughes would be twofold: (1) placing the witness in his proper setting in order to facilitate impeachment, *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); and (2) locating the witness so that he will be available to testify, *United States v. Gentile*, 495 F.2d 626, 633, 634 at n. 9 (5th Cir. 1974); *see United States v. Ayala, supra; Ashley v. Wainwright, supra*. There was no necessity to know of Ken's address to accomplish either of these goals. Since Ken was called as a defense witness, his address was obviously not needed to compel his attendance in court. And while knowledge of the location of a witness's present address may be an important element of cross-examination, *Smith v. Illinois, supra*, Ken's character was, as stated earlier, thoroughly penetrated by the appellant's examination. The scope of a hostile witness' examination is a matter within the trial court's sound discre-

tion, *Smith v. Illinois, supra, United States v. Markham*, 537 F.2d 187 (5th Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977), and since Hughes was afforded ample opportunity to accomplish his objectives without the necessity or the desired disclosure, the trial judge's ruling did not amount to plain error. *See United States v. Elorduy*, 612 F.2d 986 (5th Cir.), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2997, 64 L.Ed.2d 861 (1980).

The appellant complains of error in sustaining the government's objection to the following remarks made by defense counsel in his closing argument to the jury:

> MR. GRAHAM: The United States Attorney, his witness is Gene Bachman, and Bachman testified—I checked, I checked the record of Lankford. How did he check it? "I checked it through the NCIC which is a computer system—
>
> MR. ZIMET: Objection, Your Honor.

Record, vol. VI, at 427. The court sustained the objection on the belief that defense counsel was attempting to pursue an improper argument to the effect that Agent Bachman knew Ken's last name long before he revealed it to the defense. If the court misunderstood the purpose of the question, defense counsel must share the responsibility. The judge repeatedly warned Hughes' attorney to refrain from commenting on evidence not in the record and the last such warning was provoked by counsel's statement that he was not promptly furnished Ken's last name. Record, vol. VI, at 426–7. In any event, if, as the appellant now claims, the purpose of the comment was to impeach Agent Bachman by demonstrating that he did not thoroughly investigate Ken's record, there was no prejudice because the lawyer was allowed to make precisely that same point repeatedly in his summation. Hughes' counsel argued that Agent Bachman "conducted a very thorough search, so thorough that he didn't come up with anything. We were the ones who came up with his record, his real rec-

ord." Record, vol. VI, at 426. Subsequently, Hughes' attorney stated to the jury:

> I believe that you heard Officer Bachman. He testified under oath that Lankford was not on probation as far as he knew at the time that he was using Lankford as an informer.
>
> We brought in the probation officer who said that he was. That is how great an agent that man is.

Record, vol. VI, at 428–9. Since the appellant achieved his purpose, he has no grounds for complaint.

■ The contention that the government did not lay a proper foundation for the admission into evidence of taped conversations between the appellant, Ken, and Agent Bachman is likewise without merit. While there are no formalistic standards governing the admissibility of tapes, *United States v. Greenfield*, 574 F.2d 305 (5th Cir.), *cert. denied*, 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978), as a general rule the government is required to prove the competency of the operator, the fidelity of the recording equipment, the absence of material alterations in the relevant portions of the recording, and the identity of the speakers. *United States v. Biggins*, 551 F.2d 64 (5th Cir. 1977). The trial judge, however, has broad discretion in determining the admissibility of such evidence and, while strict compliance with the government's particularized burden is the preferred method, the paramount purpose of the inquiry is to insure the accuracy of the recording. *United States v. Gorel*, 622 F.2d 100 (5th Cir. 1979) *cert. denied*, 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980); *United States v. Biggins, supra; see United States v. Williams*, 578 F.2d 67 (5th Cir. 1978); *United States v. Greenfield, supra*. In the present case, the government failed to offer any evidence of the competency of the operator or the fidelity of the recording equipment. While compliance with the *Biggins* criteria would have been preferable, the evidence here discloses that the trial court was correct in admitting the tapes. The tapes in this instance are more reliable than those properly

admitted under similar facts in *United States v. Biggins, supra.* Here, as in *Biggins*, the government's failure to show the competency of either the operator or the machine was overshadowed by evidence which demonstrated the reliability of the tapes. The tapes accurately reiterated the sworn testimony of the DEA agent. The speakers were identified by their voices on the basis of past conversations with the agents. *See* Fed.R.Evid. 901(b)(5). Furthermore, Hughes admitted on cross-examination that it was his voice on the tapes telling Agent Bachman that he wanted to set up the drug deal. Record, vol. VI, at 365. The chain of custody was clearly shown and there was no hint at trial that the tapes may have been altered. Unlike *Biggins*, the government here provided an additional indicia of reliability when Agent Bachman testified that the tapes were accurate reflections of the conversations in issue. Agent Bachman also replayed the tapes in Ken's presence to verify the accuracy of the recordings. *See United States v. McMillan*, 508 F.2d 101 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). Where there is sufficient independent evidence of the accuracy of the tape recordings to insure their reliability, we will not disturb the trial court's decision to admit them even though at the time that judgment was made the government had not carried its particularized burden. *United States v. Gorel*, 622 F.2d 100 (5th Cir. 1979); *United States v. Biggins, supra.*

■ Finally, Hughes objects to several of the prosecutor's closing remarks and questions propounded to Hughes on cross examination. Most of the remarks excepted to appear to be fair comments on the evidence, but the prosecutor did tell the jury that Hughes looks and acts like a drug dealer. While such statements are unfortunate, they must be viewed in the context of the entire record to determine whether they prejudicially affected substantial rights of the defendant. *United States v. Dorr*, 636 F.2d 117 (5th Cir. 1981); *United States v. Hoskins*, 628 F.2d 295 (5th Cir.), *cert. denied*, 449 U.S. 987, 101 S.Ct. 406, 66 L.Ed.2d 249 (1980); *United States v. Risi*, 603 F.2d 1193 (5th Cir. 1979). In light of the fact that this was an isolated instance and in view of the overwhelming evidence against the defendant, we have no difficulty in concluding that the prosecutor's remarks were not so prejudicial as to require a new trial.

■ On cross-examination, Hughes was asked whether he realized that according to his version, he would have been defrauding Agent Bachman. The objection on grounds of relevancy was overruled. Considering the overwhelming evidence against Hughes and noting that the trial judge instructed the jury not to consider any conduct or offense not alleged in the indictment, we believe that if the ruling was error, it was certainly harmless. *United States v. Cross*, 638 F.2d 1375 (5th Cir. 1981). Hughes was asked whether his wife left him because of his participation in illegal drug transactions. The trial judge sustained an objection to the question and denied Hughes' motion for a mistrial. Hughes claims that a mistrial should have been granted because the question was prejudicial. We find no error in the trial judge's ruling. *See United States v. Hernandez*, 646 F.2d 970 (5th Cir. 1981); *United States v. Mack*, 643 F.2d 1119 (5th Cir. 1981).

For the foregoing reasons, Hughes' conviction is AFFIRMED.