**UNITED STATES of America**

v.

**Robert Jeffrey VERLIN.**

**No. CR–3–78–178.**

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 29, 1979.

D. Mark Elliston, Asst. U. S. Atty., Dallas, Tex., for U. S.

John E. Rapier, Dallas, Tex., for Verlin.

## MEMORANDUM OPINION

HUGHES, District Judge.

Robert Jeffrey Verlin was convicted on all three counts of an information before a United States Magistrate. Two counts charged the defendant with making interstate telephone calls from Ohio to the Dal-

las Police Department and Dallas Fire Department without disclosing his identity and falsely reporting disturbances with the intent to harass and annoy members of those respective departments in violation of Title 47, United States Code, Section 223(1)(B). The third count charged the defendant with repeated interstate phone calls to his ex-fiancee with the intent to harass her in violation of Title 47, United States Code, Section 223(1)(C).

Several points of claimed error are raised on appeal none of which warrant reversal.

## I. FACTS

Viewed in the light most favorable to the government, see *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) the evidence reveals the following sequence of events.

The testimony of Ms. Sally Steggles, the government's principal witness, disclosed that she became engaged to appellant in October 1976. The relationship deteriorated until in May 1977, Steggles terminated the engagement and returned appellant's ring. In the ensuing months appellant called Steggles often attempting to rekindle their lost love. Appellant's unrequited love turned to frustration and his calls became more threatening, his language more vulgar and obscene. During this same period Steggles began to receive "hang-up" calls late into the night. In July of 1977 at approximately three in the morning Steggles was awakened by fire fighters, police officers, fire engines, police cars and ambulances around the front of the house. She was told that someone had called and falsely reported a fire, a brawl, and that someone had been thrown through a plate glass window. Shortly thereafter taxi drivers arrived at her home every thirty minutes although she had not summoned them.

In January 1978, Steggles moved in with friends, Mr. and Mrs. Brown. Subsequently she moved to a neighboring apartment and obtained an unlisted telephone in the name of Mr. Gary Brown to deter the continued receipt of unwanted calls.

Approximately 11:00 p. m. on February 21, 1978, Steggles began receiving "hang-up" calls and took the phone off the hook. Meanwhile, her neighbors, the Browns, began receiving "hang-up" calls.

According to their testimony, later that night a fire engine, an ambulance and policemen arrived at their home in response to a false report that a fire and marital disturbance had occurred at their residence. A police dispatcher corroborated their testimony stating she received a call that night from a person identifying himself as Mr. Brown who reported a disturbance at the Brown's address. Mrs. Brown accompanied the police officers to Steggles' apartment. With the police present Steggles received a succession of "hang-up" calls. Appellant's telephone records disclosed that on the night of February 21, 1978, and the morning of the 22nd, nine calls were placed from his phone to Steggles' home and one call was made from appellant's phone to the Dallas Police Department. A tape recording made by the Dallas Fire Department was admitted into evidence. In it, an individual identifying himself as Gary Brown reported that a fire had started from an electric blanket and that his wife was unconscious from smoke inhalation.

Steggles and one of appellant's co-workers positively identified the voice on the tape as that of appellant's.

Testimony from a former boyfriend of Steggles disclosed that appellant had contacted him more than once to discuss appellant's waning relationship with Steggles. Appellant indicated he would "get even" with Steggles and threatened to cause emergency vehicles to be sent to her home.

A private investigator also testified that appellant had contacted him and unsuccessfully attempted to employ him to discover an unpublished telephone number.

## II. ISSUES

Appellant contends that the trial court committed five errors requiring an acquittal, or in the alternative, a reversal and remand for a new trial: first, that the trial court committed "plain error" by admitting

into evidence the Defendant's computerized telephone billing statement; second, that it was "plain error" to admit into evidence a tape recording from the Dallas Fire Department; third, that the trial court committed reversible error by allowing the prosecution to introduce evidence of extraneous offenses and acts; and fourth and fifth, that the trial court lacked sufficient evidence to convict the defendant on any of the three counts for which he was convicted. Finding no error in the trial court's evidentiary rulings and no error in its finding sufficient evidence to support its determination of guilt, it is ordered that the judgment of the magistrate herein is hereby affirmed.

### III. ADMISSIBILITY OF DEFEND-ANT'S TELEPHONE BILLING STATEMENTS

Defendant challenges the Government's introduction of his computerized telephone billing statement on the grounds that no foundation was laid demonstrating that the computer was functioning properly and accurately.

The Government contends it has wholly complied with Rule 803(6) of the Federal Rules of Evidence which provides, inter alia:

> (6) Records of regularly conducted activity [if contained in] a memorandum, report, record, or data compilation, in any form, of acts, . . . made at or near the time . . . if kept in the course of a regularly conducted business activity, and if it was the regular practice, of that business activity to make the memorandum, . . . or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

■ The custodian of these toll records testified that the cards were compiled and kept by the Oleria Telephone Company in Oleria, Ohio, and were kept in the ordinary course of business. As this Circuit has held in *United States v. Jones,* 554 F.2d 251, 252 (5th Cir. 1977) (per curiam) it is not essen-

tial that the witness through whom these records are offered be the recorder or even know who the recorder was. *Accord, United States v. Russo,* 480 F.2d 1228, 1240 (6th Cir. 1973). It is sufficient under Rule 803(6) for the witness to identify the records as authentic and testify that such record was created and preserved in the regular course of business. *Id., citing United States v. Newman,* 468 F.2d 791, 795-96 (5th Cir. 1972) *cert. denied,* 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).

Defendant would distinguish the holding in *Jones, supra,* claiming that sufficient evidence had been presented which raised doubts as to the accuracy and thus the "trustworthiness" of the billing cards. Once the reliability of the data is cast in doubt, the Defendant argues, the Court must proceed to make an independent determination as to the data's reliability along the lines expressed in *United States v. Russo,* 480 F.2d 1228 (6th Cir. 1973).

■ The Defendant's argument fails for a number of reasons. First, it is apparent that the trial judge found nothing unreliable about these billing records. Because the trial court has "wide discretion" in determining a document's "inherent probability of trustworthiness", *Jones, supra* at 252, and because there is little in the record to refute its determination, this Court will not upset such a finding in the name of plenary appellate review.

■ Second, to the extent such evidence did raise questions as to the reliability of the data, these doubts affect the weight to be accorded this evidence not its admissibility. 28 U.S.C. § 1732(a); *see also Russo, supra* at 1243. Lastly, it is clear from the transcript that at the trial defense counsel did not challenge the admissibility of these records for any reason other than relevance. Yet, it is for this reason appellant urges this Court to find "clear error" in the trial court's ruling. This Court must affirm in the absence of "plain error". *United States v. Juarez,* 566 F.2d 511, 516-517 (5th Cir. 1978), *Dupoint v. United States,* 388 F.2d 39, 45 (5th Cir. 1967). A review of the

record does not warrant a finding of obvious error.

## IV. ADMISSIBILITY OF FIRE DEPARTMENT TAPE

Appellant again acknowledges that the defense made no timely objection to the introduction of the recording made by the Dallas Fire Department, but argues that the introduction of the tape recording constituted "plain error" which affects substantial rights of the Defendant. Fed.R. Crim.P. 52(b). Admittedly, without the tape and subsequent voice identification as that of the defendant, count two would perforce fall.

Unfortunately, Appellant is again in the unenviable position of raising as error on appeal what presumably could have been cured had an objection been timely made by trial counsel. *United States v. Brown,* 548 F.2d 1194, 1207–08 (5th Cir. 1977); *United States v. Jacquillon,* 469 F.2d 380, 386 (5th Cir. 1972).

He now contends that the prosecution failed in all respects to lay a proper foundation for its admission. In *United States v. McKeever,* 169 F.Supp. 426, 430 (S.D.N.Y. 1958) *rev'd on other grounds,* 271 F.2d 669 (2d Cir. 1959) the Court concluded that before a sound recording is admitted into evidence it must meet certain foundational requirements. *See also United States v. McMillan,* 508 F.2d 101, 104 (8th Cir. 1974).

It is clear from a reading of *United States v. Biggins,* 551 F.2d 64 (5th Cir. 1977), that the Fifth Circuit has neither adopted nor rejected the *"McKeever"* criteria as the only conditions precedent to admitting sound recordings in this circuit. Rather, the Court in *Biggins* opted for a more fluid approach. To be sure, this Court concurs in Judge Goldberg's admonition that "[s]trict compliance with the government's particularized burden is the preferred method of proceeding." *Biggins, supra* at 67. But the Court in *Biggins* recognized that in some instances independent evidence of the accuracy of a tape recording could exist which would militate against "formalistic adherence to the standard" established. *Id.* at 67.

It is the opinion of this Court that the trial court had sufficient independent indicia of the tape's accuracy to conclude that the predicate to admission of a sound recording as enumerated in *McKeever* and *McMillan* could be dispensed with.

Manifestly, the tape meets the "business records" exception to the hearsay rule. *See LeRoy v. Sabena Belgian World Airlines,* 344 F.2d 266, 272–273 (2d Cir. 1965) (Air transmission deemed equivalent of regularly written journal and admissible under "business records" exception). It is a contemporaneous record of *acts* (the emergency call). It was kept in the ordinary and regular course of the Dallas Fire Department's *business.* Fed.R. of Ev. 803(6) (" 'business' . . . includes . . . calling[s] of every kind, whether or not conducted for profit"). (Emphasis added). Under these circumstances it is equally arguable that Rule 803(6) governs the recording's admissibility. *Cf. Colvin v. United States,* 479 F.2d 998, 1002 (9th Cir. 1973) (dicta suggesting that police reports are within both Rule 803(6) and Rule 803(8)). And finally, it was the Dallas Fire Department's regular practice to make such a recording. (Tr. 136–38).

A finding that a sound recording is within the "business record" exception to the hearsay rule does much to diffuse the relevant concerns expressed in *McKeever, McMillan,* and *Biggins.* The gravamen of these cases is that sound recordings prepared in anticipation of litigation must be cautiously admitted in evidence. *Biggins, supra* at 66. *See also United States v. Haldeman,* 181 U.S.App.D.C. 254, 559 F.2d 31, 107 (1976) (court must eliminate reasonable possibility of misidentification and adulteration of routinely created tape before it is admissible). Flawless as this notion is, it remains inappropriate when applied to the facts of this case. In all three cases the sole purpose for the creation of the respective tapes was to prepare evidence for trial. Unlike the instant case, the tapes were of a nonroutine character and their raison d'etre

was adversarial in nature. *Cf. United States v. Grady,* 544 F.2d 598 at 604 (2nd Cir. 1976) (routine function of recording serial numbers of firearms held to be within public records exception and not within exception which would exclude "matters observed by . . . law enforcement personnel"); *United States v. Orozco,* 590 F.2d 789 (9th Cir. 1978) (routine compilation of license plate numbers by customs officials held to be "public records" within ambit of Rule 803(8) of the Fed.R. of Ev.).

■ Arguably, the attributes which make this tape a business record provide most of the answers to the questions these cases raise. A "business record" is excepted from the hearsay rule because its reliability is assured by its regularity, its continuity, the very reliance which the business itself places upon it and the duty imposed on the employee to make an accurate record.

It is this Court's conclusion that absent some suggestion below as to; the operator's incompetency, the machine's disfunctioning, the possibility of alteration or improper preservation, the lower court's admission of the tape recording as a "business record" disposes of these questions. *Cf. United States v. Haldeman,* 181 U.S.App.D.C. 254, 559 F.2d 31, 107 (1976) (Lack of evidence demonstrating that system did *not* accurately preserve conversation supports admissibility of recording). In the context of this case the good faith of the speaker or the voluntariness of the speech are irrelevant considerations.

■ Although the requirement that the speakers be identified poses a different problem, our inquiry is made substantially easier because two witnesses positively identified the voice on the tape as that of the defendant. Rule 901(a) & (b)(5) provides that, "identification as a condition precedent to admissibility is satisfied by . . . [i]dentification of a voice, whether heard first hand or through mechanical or electronic transmission or *recording, by opinion based upon hearing the voice at any time* under circumstances connecting it with the alleged speaker." (Emphasis added). See also 5 Weinstein & Berger, *Wein-*

*stein's Evidence* ¶ 901(b)(5)[01] at 901–64 (1976). (Voice heard over transmitting device subject to identification in the same manner as if speaker heard voice directly). Although the Fire Department's civilian dispatcher did not testify at trial, it was wholly permissible to allow a witness possessing sufficient familiarity with the defendant's voice to identify the voice on the recording even though these witnesses were not parties to the conversation. Weinstein & Berger, 5 *Weinstein's Evidence,* ¶ 901(b)(5)[02] at 901–73 (automatic telephone answering device admissible upon proof that it was working properly and voice identified).

■ Here, proof that the recording properly fell within either the "business record" or the "public record" exception to the hearsay rule served as independent evidence of its authenticity and its accuracy. To the extent that it did not, this Court finds that the applicable requirements of *McKeever, McMillan* and *Biggins* have been met. Under these obvolutive holdings it is this Court's conclusion that no error was committed by the admission into evidence of the Dallas Fire Department's sound recording of an emergency call made on Feb. 21, 1978.

## V. ADMISSION OF EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS

Appellant claims that the Court erred: "by allowing extraneous offenses and acts to be presented to the Court which were not related in time to the offense charged, were not in response to a defense presented by the Defendant, and which did not show by clear and convincing evidence that the Defendant committed the extraneous offenses and acts alleged, and they are apparently presented in bad faith and which were all unfair and prejudicial to the Defendant".

Unfortunately, Appellant's "blunderbusslike" objection misses its mark, the Court finding no error in the introduction of this evidence.

We begin and end our inquiry with the caveat that the "same strictness will not be observed in applying the rules of evidence in judge-trials as in trials before a jury." McCormick, *Evidence*, § 60 at 137 (2d. Ed. 1972); 89 C.J.S. § 589. This policy of affording the trial judge greater latitude in the admission of evidence in judge-trials is implemented by the creation of a presumption. In reviewing a case, "the admission of incompetent evidence over objection will not ordinarily be a ground for reversal if there was competent evidence received sufficient to support the charge." McCormick, *Evidence*, § 60 at 137. Accordingly, it will be presumed that the trial judge relied upon only competent evidence in reaching its decision. *United States v. Impson,* 562 F.2d 970, 971 (5th Cir. 1977); *United States v. Masri,* 547 F.2d 932, 936 (5th Cir. 1977). Any error in its admission was harmless so long as sufficient admissible evidence exists to support Appellant's conviction. *See infra Part VI.*

## VI. SUFFICIENCY OF THE EVIDENCE

There remains to be considered whether sufficient evidence existed to convict on each of the three counts.

Appellant urges this Court to find that where a caller alleges a legitimate purpose for calling and raises a scintilla of evidence demonstrating an unrelated problem with his telephone he is insulated from conviction under 47 U.S.C. § 223(1)(C). *See generally United States v. Darsey,* 342 F.Supp. 311 (E.D.Pa.1972).

He further asserts the trial court lacked sufficient evidence to convict for an offense under 47 U.S.C. § 223(1)(B).

Sitting in an appellate capacity, a District Court need not determine whether the evidence convinces it, beyond a reasonable doubt, of the defendant's guilt. The scope of appeal is the same available to defendant "from a judgment of a district court to a court of appeals". Rule 8(d) *Rules of Procedure for the Trial of Minor Offenses before United States Magistrates.*

Viewing "the evidence and all reasonable inferences flowing therefrom in the light most favorable to the government," *United States v. Cadillac Overall Supply Co.,* 568 F.2d 1078, 1084 (5th Cir. 1978); *Glasser, supra* 315 U.S. at 80, 62 S.Ct. 457, I find substantial evidence to support Appellant's convictions.

AFFIRMED.