787 F.2d 592
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PAUL F. PHIPPS, Plaintiff-Appellant,
v.
HARRISON RADIATOR, Division of GENERAL MOTORS CORPORATION;
INTERNATIONAL UNION OF ELECTRICAL, RADIO & MACHINE WORKERS,
AFL-CIO-CLC; LOCAL 801 of the INTERNATIONAL UNION OF
ELECTRICAL, RADIO & MACHINE WORKERS, AFL-CIO-CLC,
Defendants-Appellees.
 85-3263
 United States Court of Appeals, Sixth Circuit.
 3/5/86
 
 AFFIRMED
 S.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION
 Before: JONES, WELLFORD and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant, Paul Phipps, appeals the district judge's entry of judgment notwithstanding the verdict in appellee's favor in this Sec. 301 pybrid action against Harrison Radiator, ('the Company'), for breach of a labor contract and against the Union for failing to follow his grievance through the requisite channels. The Company discharged Phipps for participation in a theft ring of air compressors. Relying upon an audio recorded confession made by phipps to a police officer, the Union declined to process the grievance. Phipps raises three assignments of error with respect to the adverse judgment.
 
 
 2
 Phipps was employed by the Company for thirty-four years at the time of his discharge in May 1982. In discharging Phipps the Company based its decision upon evidence that Phipps had been involved with a group of employees who had stolen air compressors from the Company. Working in the paint room, Phipps had access to the compressors as they came through on the conveyor belt. There was evidence that the compressors were taken or removed from the paint room.
 
 
 3
 Alerted by the Company, local police broke up the ring during the spring 1982 by arresting a principal who implicated Phipps as well as other members. Phipps was interviewed by authorities at the workplace where Phipps set out his role in the theft ring on audio tape. Based on this tape, the Company discharged Phipps; four other members of the ring were also terminated. The union had access to the tape with respect to Phipps' grievance over his discharge.
 
 
 4
 Phipps had immediately filed a grievance after discharge with the Union, Local 801 (of I.U.E.W.). At an 'umpire shakeout,' where the Union and Company attempt to settle the grievance before submission to an umpire, the Union agreed to withdraw the grievances of four of the five employees discharged, including Phipps' grievance based on information in the tape. The fifth employee's grievance was settled because no conclusive evidence existed to find him guilty of participating in the ring. In explaining its withdrawal of Phipps' grievance, the Union relied primarily on the taped confession. Under plant rules, theft was a basis for discharge, and the Union saw no point in persisting with Phipps' grievance under the circumstances.[1]
 
 
 5
 Phipps then filed this suit in the United States District Court for the Southern District of Ohio, alleging that the Company violated the labor agreement and that the Union breached its duty of fair representation by not pursuing his grievance further. The district judge instructed the jury that it must find Phipps discharged for cause if it found Phipps guilty of participation in theft from his employer. In returning a general verdict in favor of the Company but against the Union, the jury answered special interrogatories in which it found that Phipps was guilty of participation in the theft. Based upon that finding, Judge Rice entered j.n.o.v. for the Union, and Phipps now appeals.
 
 
 6
 The key evidence upon which the Company and the Union based their course of conduct is the audio recording of Phipps' confession by a local police officer. On direct examination the officer detailed that Phipps agreed to make an oral statement confessing his role in the misappropriation of compressors. To record the statement, the officer used one of the Company's dictating machines and had some initial difficulty with the 'on-off' switch. During his introductory statement on the tape, the officer stated that the interview concerned 'theft.' At that point Phipps objected, and the tape was turned off. Phipps explained, (off the tape), that he did not believe that his actions amounted to theft. After that point was resolved, the officer turned the tape back on and handed Phipps the microphone. Phipps then detailed how he removed thirty to forty compressors from the line and gave them to a fellow employee, as a favor, for about $100.00. At the end of his statement, Phipps stated that he wanted 'to get this off my chest,' and that he made the statement voluntarily. The recorder was then turned off, and the tape was properly marked for identification by the officer.
 
 
 7
 Before the tape was played for the jury, the district judge held a conference with counsel about the admissibility of the recording. Appellant contended that since the tape showed that 'gaps' occurred during the course of the recording, it was inadmissible because of lack of trustworthiness. The district court rejected that objection, reasoning:
 
 
 8
 I think it goes, since this is a civil case, to the weight rather than the admissibility. And these gaps can be explained or not explained through the process of direct examination. Mr. Buchanan has attempted to explain some of the pauses in his direct. So I would overrule the objection.
 
 
 9
 On appeal appellant further challenges the accuracy of the recording, contending that the officer was unfamiliar with this particular recording device and had difficulty with its use.
 
 
 10
 Appellant cites in support of his contention United States v. McKeever, 169 F.Supp. 426 (S.D.N.Y. 1958), rev.'d on other grounds, 271 F.2d 669 (2d Cir. 1959). We follow the general rule that a decision to admit a tape recording into evidence is within the trial court's sound discretion. See United States v. Robinson, 707 F.2d 872, 876 (6th Cir. 1983), aff'd after retrial, 763 F.2d 778, 781-82 (6th Cir. 1985); see also United States v. Wood, 695 F.2d 459, 462-63 (10th Cir. 1982); United States v. Biggins, 551 F.2d 64, 66-67 (5th Cir. 1977); United States v. Haldeman, 559 F.2d 31, 109 (D.C. Cir. 1976); United States v. Avila, 443 F.2d 792, 795 (5th Cir. 1971); United States v. Knohl, 379 F.2d 427, 440-41 (2d Cir. 1967).
 
 
 11
 The proponent of the recording sought to be introduced must authenticate the tape by identifying the speakers on the tape and that the recording fully, fairly, and accurately reflects the taped conversation. Biggins, 551 F.2d at 67. In this case, the officer who testified identified Phipps as the speaker and stated the circumstances surrounding the recording as well as the substance of the recorded material. Phipps neither denies his voice on the tape nor asserts that it does not clearly and fully set out what he said. Since appellant had an opportunity to raise objections and to cross examine fully the police officer who made the recording, we find no abuse of discretion in admitting the recording into evidence.[2]
 
 
 12
 Appellant also assigns as error the following jury instruction:
 
 
 13
 The theft of company property by an employee is good cause for discharge of such employee by the company . . ..
 
 
 14
 In determining whether or not the labor agreement was breached or violated by General Motors, you will be required to determine whether or not the Plaintiff was discharged for cause.
 
 
 15
 If you find that the Plaintiff was involved in the theft of property, the air compressors, then the Plaintiff was discharged for cause and Defendant General Motors did not violate the labor agreement and you, the jury, must return a verdict for Defendants.
 
 
 16
 (Emphasis added).
 
 
 17
 In his objection to this jury instruction, appellant's counsel argued that it was a jury question whether the collective bargaining agreement established theft as a good cause basis for termination.[3] As the district judge aptly noted, however, '[t]here is no evidence from anybody that the company does now or has ever considered theft anything less than good cause for discharge. . . .' This assignment of error is without merit.[4]
 
 
 18
 Accordingly, we affirm the district court's setting aside the jury verdict for Phipps as to the Union. Judgment is granted to appellees.
 
 
 
 [1]
 Phipps was subsequently indicted, but the indictment was later dismissed
 
 
 [2]
 In his testimony Phipps claimed that he never knew that he was taped nor did he know that he was making a confession. Rather he took the position that the officer wrote out the incriminating statement and asked him to read it aloud. Apparently Phipps asserts that the police officer surreptitiously taped his reading of the statement. Clearly, the jury discounted that claim and believed the police officer's version
 
 
 [3]
 Appellee's counsel argues that counsel for appellant waived objection to the jury instruction by not objecting to it during a conference with the court. Appellant's counsel did not object to this instruction until after final arguments were made to the jury, although he knew from a prior conference that it would be given to the jury. Appellee's counsel relied on this instruction during final argument. Since appellant's counsel did object before the jury retired, the objection was not untimely even if belated
 
 
 [4]
 Appellant also claims as error the district judge's refusal to admit into evidence documents showing that for purposes of unemployment compensation, the Ohio Bureau of Employment Services did not find that appellant was terminated for cause. Since appellant's counsel made no offer of proof of record in this respect, this assignment of error may be rejected on that basis. fed. R. Evid. 103(a). We do not, however, believe that the district court erred in this respect in any event