IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 18, 2008

Charles R. Fulbruge III
Clerk

No. 07-11197

UNITED STATES OF AMERICA

Plaintiff - Appellee

V.

LEE ROY CHANEY

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
No. 3:07-CR-004-M

Before KING, HIGGINBOTHAM, and WIENER, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Lee Roy Chaney was convicted on two counts of distributing methamphetamine.  Chaney appeals his judgment and sentence, arguing that the district court erred when it admitted both audio–video recordings of the drug transactions and a government-made transcript of the audio.  For the following reasons, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2006, Juan Hernandez was arrested for possession of methamphetamine. Shortly thereafter, he agreed to act as a confidential informant for law enforcement, specifically targeting narcotics, in exchange for favorable treatment regarding his arrest for drug possession. On April 12, 2006, Hernandez, equipped with an audio–video recording device, met with Chaney and purchased methamphetamine from him. On April 18, 2006, Hernandez was again equipped with a recording device and bought from Chaney over 100 grams of methamphetamine for $3,000. Chaney was indicted on two counts of distributing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and the case went to trial in the United States District Court for the Northern District of Texas.

At a pre-trial hearing, Chaney's counsel objected to the admission of the audio–video recordings on grounds of "hearsay, authenticity, and 404(e)."[1] Chaney's counsel argued that the recordings were not probative because it was not possible to view the drug sale. The court responded that the video probably would not "be terribly prejudicial either." Chaney's counsel also argued both that the recordings should not be admitted because the audio was "very difficult to understand" and that she had objections to the transcript that the government had prepared. The government responded that it was prepared to authenticate the recordings with Hernandez's testimony and the testimony of an agent involved in downloading the recordings. The court stated that the intelligibility of the audio and video would go to the weight, as opposed to the admissibility, of the evidence. It did say, however, that it would not "allow the government to

---

[1] Though Federal Rule of Evidence 404(e) does not exist, we assume that Chaney's attorney was referring to Rule 403. This rule excludes relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

fill in the blanks for words" if the audio was unclear and there was a bona fide objection to the accuracy of the transcript. The parties admitted that they had not conferred about what words they thought were or were not accurate in the transcript. The court ultimately resolved to instruct the jury that the government and its witnesses had prepared the transcript and that the jury should determine its accuracy. Furthermore, the court agreed to listen to the tapes "upon request of counsel" and, if necessary, instruct the jury as to any section of the transcript that was wrong and as to the correct actual words. The court also agreed to instruct the jury that the primary evidence was the recordings, not the transcript. The court instructed Chaney's counsel to "flag" any inaccurate portions and present them to the court for verification. The record does not show any instance where Chaney's counsel subsequently challenged a specific section of the transcript. Further, the defense did not provide its own transcript to the court for comparison.

On the first day of trial, Special Agent Todd Carter Yant testified about the recordings and transcript. His function, he stated, was to install the recording equipment on Hernandez and then transfer the recordings to a compact disk afterwards. Yant testified that both the April 12th and April 18th recordings were accurate depictions of what transpired on those days.[2] Yant also testified that the transcripts were fair and accurate, and that any inaudible portions were appropriately marked "inaudible." Yant's testimony included an overview of how he monitored Hernandez on both April 12th and April 18th. Before the transcripts were admitted into evidence, the trial judge gave the following oral instruction to the jury:

---

[2] During the direct examination of Special Agent Yant, Chaney's counsel reurged her "objection to 403, relevance, and authenticity." The court overruled the objection, stating that the defense should develop this on cross-examination. Chaney's counsel again objected on these grounds just before the judge's first oral instruction to the jury regarding the transcripts.

Ladies and gentlemen, I'm going to say something to you about these transcripts.

This is what the government contends is what is being said on these tapes. You will hear the tapes. You may not agree that these transcripts are accurate. That's up to you to determine. The audio-visual recordings are the actual evidence of the transaction. So if you think there is a discrepancy, then you should go with what you hear on the tape. There may be a word there that you disagree with. The tape is the principal evidence of what the transactions were.

It may also be that the defense is able to develop that the transcripts are incorrect, and if persuaded to that effect, then you will be able to modify your understanding based on what you hear here in the courtroom.

When the tapes are played I will strongly suggest that you focus on the tapes and that you don't just read the transcript and not listen to what is heard on the taped calls.

When the government requested to provide the transcripts to the jury, the judge gave another instruction:

Ladies and gentlemen, I remind you of the admonition that I gave you before. The tapes reflect what occurred to the extent they record what occurred.

The transcripts are another person's interpretation of what occurred. You are best guided by your assessment of what actually transpired. You may look at the transcripts, they have been admitted, but when the tapes are played focus principally on the tape.

The judge also instructed the jury not to read the transcripts before they heard the relevant audio.

Hernandez then testified as to his activities on April 12th and confirmed that the April 18th recording was fair and accurate. Hernandez also stated that the transcript of the April 18th recording was a fair and accurate record of what happened that evening. At the end of the first day of trial, the judge asked the

government how it prepared the transcript. The government responded by saying that the officers worked with Hernandez to reconstruct what was said. The judge also expressed concern about the recording, stating that there were "probably 20 words during the entire segment that [she] . . . could understand." The judge reiterated her willingness to listen to any specific section of the recordings that Chaney contested. She also said that, while the jurors may be able to hear the recordings better in a small, windowless room, the recordings could still "sound like a bunch of gibberish" without a headset.[3]

On the second day of trial, Hernandez continued his testimony and the judge again instructed the jury about the disputed accuracy of the transcripts.[4] Hernandez proceeded to testify extensively while the government played different parts of the recordings. During this testimony, Hernandez identified Chaney in the video, explained certain phrases, and described the drug transactions that had transpired. On cross-examination, Hernandez confirmed that he and law enforcement agents created the transcripts from the recordings. He also acknowledged certain sections where the transcript said "U/I."[5] Additionally, Officer Richard Clark testified on this day as to his role in driving Hernandez to Chaney's apartment and being present at the transcription of the recordings, and as to his opinion that the transcripts were a fair and accurate depiction of what took place on April 12th and 18th.

During a recess, the judge again expressed concern about the quality of the court's sound system, describing it as "not acceptable" because the jury either

---

[3] The judge suggested that the courtroom itself was not conducive to listening to the recordings because it was large with a high ceiling.

[4] The judge stated in full: "Ladies and gentlemen, I will renew my instructions to you with respect to the transcript. The government—it is the government's position that the transcripts are accurate reflections of what was said. The defense disputes that. That will be up to you to determine."

[5] This notation means "unintelligible."

could not hear the recordings or was "getting blasted." Though the judge acknowledged that the sound quality was better than the previous day, she said that the "collateral damage to the ears of the jury" was "not worth it." At this point, the government informed the judge that it would no longer show the video and would instead use the transcript as a source for posing questions to witnesses. Defense counsel said that it did not "have any further use of the video" and did not object to use of the transcripts for the remainder of the trial.

On the last day of trial, the judge issued a final written instruction to the jury regarding the transcripts:

> You are specifically instructed that whether the transcripts correctly or incorrectly reflect the content of the conversations or the identity of the speakers is entirely for you to determine based upon your own evaluation of the testimony you have heard concerning the preparation of the transcripts, and from your own examination of the transcripts in relation to your hearing of the tape recordings themselves as the primary evidence of their own contents; and, if you should determine that the transcripts are in any respect incorrect or unreliable, you should disregard them to that extent.

Before deliberation, the court instructed the government to send the recordings back to the jury to use "if they wish."

The jury found Chaney guilty on both counts of knowingly and intentionally distributing a mixture and substance containing a detectable amount of methamphetamine. He was sentenced to imprisonment for a total term of 132 months, with a recommendation that he participate in the 500-hour drug treatment program in the Bureau of Prisons. Chaney appealed the judgment and sentence.

## II. STANDARD OF REVIEW

This court reviews a district court's evidentiary rulings for abuse of discretion. Unites States v. Sanders, 343 F.3d 511, 517 (5th Cir. 2003). If we find abuse of discretion, such error is reviewed for harmlessness. Id.

### III. DISCUSSION

Chaney sets out five main arguments on appeal: (1) the recordings were not properly authenticated; (2) the recordings were more misleading than helpful; (3) the recordings contained hearsay; (4) the jury should not have been allowed to use the transcripts; and (5) the transcripts violated the best evidence rule. We consider each of these arguments in turn.

A. Whether the Recordings Were Properly Authenticated

Authentication is a condition precedent to admission of evidence that is satisfied when a party presents "evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901. This court finds a sound recording admitted into evidence to have been properly authenticated only when the party introducing it demonstrates "that the recording as played is an accurate reproduction of relevant sounds previously audited by a witness." United States v. Biggins, 551 F.2d 64, 66 (5th Cir. 1977). The burden falls on the prosecution to present: (1) "the competency of the operator"; (2) "the fidelity of the recording equipment"; (3) "the absence of material deletions, additions, or alterations in the relevant portions of the recording"; and (4) "the identification of the relevant speakers." Id. Though strict compliance with these requirements is preferred, a judge's "discretion to admit the evidence is not to be sacrificed to a formalistic adherence" to the standard. Id. at 67; see also United States v. Stone, 960 F.2d 426, 436 (5th Cir. 1992) ("[T]he Biggins decision indicates that the list is not meant to command formalistic adherence at the expense of the district court's discretion." (internal quotation marks omitted)).

In the present case, the district court did not abuse its discretion when it admitted the recordings as properly authenticated. Agent Yant, informant Hernandez, and Officer Clark authenticated the recordings. Yant testified to the competency of the agents responsible for the April 12th and 18th recordings and the fidelity of the audio–video recording equipment. Hernandez testified to the accuracy of the recordings, including identification of the relevant speakers. Clark described his role in the operation with Hernandez and testified that the recordings and transcripts were fair and accurate depictions of the April 12th and 18th drug transactions.

B. Whether the Recordings Were More Misleading Than Helpful

This court reverses the admission of recordings on grounds of inaudibility only "if the inaudible parts are so substantial as to make the rest more misleading than helpful." United States v. Thompson, 130 F.3d 676, 683 (5th Cir. 1997) (internal quotation marks omitted); see also FED. R. EVID. 403 (stating that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."). We have "consistently held" that "poor quality and partial unintelligibility do not render tapes inadmissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." Stone, 960 F.2d at 436. This court regularly finds that recordings should not be excluded on these grounds. For example, in United States v. Polk, this court "carefully listen[ed] to the four tape recordings at issue" and found no abuse of discretion. 56 F.3d 613, 632 (5th Cir. 1995). In that case, we reasoned that "[w]hile some portions of the recordings are inaudible or unintelligible as the appellants claim, much of the conversations can be heard clearly and may be followed on the government's transcripts." Id.

In the present case, the district court did not abuse its discretion when it determined that the recordings were more helpful than misleading. We have

carefully listened to the five disks at issue and recognize that there are some inaudible portions. However, the recordings contained not only significant portions of intelligible audio, but also corresponding video of Hernandez and Chaney discussing drugs, counting money, and going to a place where a drug transaction allegedly occurred. The April 18th recording even includes footage of Hernandez holding two bags of methamphetamine. The helpfulness of these recordings thus far outweighs the potentially misleading nature of certain unintelligible sections of the audio.

C. Whether the Recordings Contained Hearsay

Hearsay is "any out-of-court statement introduced in evidence for the purpose of proving the truth of the matter contained in the statement." United States v. Williamson, 450 F.2d 585, 589 (5th Cir. 1971). A statement is not hearsay if it is offered against a party and is the party's own statement. FED. R. EVID. 801(d)(2); Thompson, 130 F.3d at 683 n.7 ("Hearsay problems are not a concern if the jury believes that the defendant was one of the participants in the conversation; any statements he made would be admissible as a statement of a party opponent."). An informant's statements are not hearsay and may be admissible when they are "part of a reciprocal and integrated conversation" with the defendant. United States v. Cheramie, 51 F.3d 538, 541 (5th Cir. 1995). In Cheramie, an informant's statements to the defendant in a recording were admitted as nonhearsay when the jury was instructed that the informant's statements were admitted for the purpose of providing context for the defendant's statements and not for the truth of what the informant asserted. Id. Finally, hearsay, even when admitted, may be harmless error. See, e.g., United States v. Allie, 978 F.2d 1401, 1408–09 (5th Cir. 1992) (holding that admission of hearsay in a video recording was harmless error when the government also introduced deposition testimony to establish facts in the video); Williamson, 450 F.2d at 591–92 (holding that admission of an undercover police officer's

statements was harmless error when the officer testified, was subjected to cross-examination, and another investigator provided almost identical testimony).

In the present case, three categories of statements are at issue: Chaney's statements, Hernandez's statements to Chaney, and Hernandez's statements to law enforcement. Chaney's recorded statements are admissible nonhearsay because they are statements of a party-opponent. Hernandez's statements to Chaney are admissible nonhearsay because they are part of the larger context of interaction regarding the sale and purchase of methamphetamine.[6] Hernandez's statements to law enforcement agents, however, do constitute hearsay if offered for the purpose of proving that certain events transpired with Chaney.[7] For example, Hernandez, in recorded asides, specifically updates law enforcement officers on Chaney's travel plans, the specifics of the drug transactions, and even his own assessment of whether the transactions will take place. Even if such statements do constitute hearsay, their admission is harmless error. Hernandez's statements in the video recording describe the events that occurred between him and Chaney. Such events were not only largely captured in the video and audio of the recordings that he created, but also brought before the jury during Chaney's testimony and cross-examination. Hence, it is unlikely that these summarizing statements in the video alone affected the jury's ultimate decision.

---

[6] Chaney argues that some of Hernandez's statements are inadmissible hearsay because Hernandez "habitually repeat[ed] the thrust" of Chaney's prior statements in order to inform law enforcement of what was transpiring. Chaney claims that, at such times, the informant was not "genuinely intending to communicate to the defendant." We find it unlikely that Hernandez's comments were in no way meant to communicate with Chaney as the two were clearly conversing when such statements took place. Thus, these statements fall under Cheramie.

[7] In its brief, the government essentially accepts that these statements constitute hearsay.

D. Whether the Jury's Use of the Transcripts was Reversible Error

Transcripts may be admitted into evidence in situations where portions of a recording are somewhat inaudible. United States v. Onori, 535 F.2d 938, 947 (5th Cir. 1976). It is within a court's discretion to admit a transcript to assist a jury that listens to a recording. Id. A transcript is substantive evidence that aids the jury in determining a recording's content and meaning. United States v. Valencia, 957 F.2d 1189, 1194 (5th Cir. 1992). In Onori, this court outlined the preferred procedure for the introduction of transcripts. 535 F.2d at 948–49. We prefer that the two sides devise a stipulated transcript. Id. at 948. If the parties do not create such a joint transcript, then the jury may consider as a matter of fact the accuracy of two different transcripts. Id. at 948–49. "[O]nce we have concluded that the defendants could have challenged specific portions of the government's transcript or prepared an alternative version, it follows that they cannot be heard to complain on appeal because they failed to take advantage of their trial opportunity." United States v. Wilson, 578 F.2d 67, 70 (5th Cir. 1978). In Wilson, the defendants "chose to attack the entirety of the government's transcript based on their contention that the tape was wholly unintelligible" instead of challenging specific portions of the government's transcript or preparing their own version. Id. We held that the issue of unintelligibility was effectively "reserved for the jurors when the district court instructed them that their own understanding of the tape would control over the government's transcript." Id.

Chaney relies on the Sixth Circuit's decision, United States v. Robinson, 707 F.2d 872, 879 (6th Cir. 1983), to generally object to admission of the transcript. Robinson held that transcripts should not be presented to a jury when the recordings are "so inaudible as to preclude transcription." 707 F.2d at 879. The court reasoned that, in the absence of a stipulation, the trial court should "make an independent determination of accuracy by reading the

transcript against the tape." Id. at 878–79. This court, however, has taken a different approach, ruling that "it is unnecessary for the trial court to decide whether a transcript is accurate before that transcript is given to the jury, so long as each side to the dispute is given an opportunity to submit a transcript containing its version of a conversation." Onori, 535 F.2d at 948. Furthermore, this court explicitly addressed Robinson in United States v. Howard, 961 F.2d 1571 (5th Cir. 1992) (unpublished table decision), reprinted in United States v. Murray, 988 F.2d 518, 523 (5th Cir. 1993) (including the full text of Howard in an appendix). We stated:

> While the Robinson court is certainly correct that the transcripts would tend to become the evidence in a case where the tapes were too inaudible to allow the jurors to evaluate the accuracy of the transcripts, the point here is that the tapes in this case were not so inaudible. The tapes here, while not ideal, were clear enough to allow the jurors in this case to determine whether the transcript was faithful to the words being spoken. Accordingly, the concerns raised by the Sixth Circuit, while valid, have no application here.

Id. at 526 n.3 (contained in the appendix to Murray).

In the present case, the transcripts are admissible despite the partial unintelligibility of the recordings. As we have already stated, the recordings are sufficiently intelligible to be admitted into evidence and are thus capable of yielding a meaningful transcript. In Wilson, we reasoned that "[o]nce we have held the tape admissible, defendants' argument falls under its own weight since it necessarily follows that the tape was sufficiently intelligible for challenging specific portions of the government's transcript or preparing a defense version." 578 F.2d at 70. Similarly, Chaney cannot now challenge the government's transcript generally if the recordings were sufficiently intelligible and Chaney did not take advantage of his trial opportunity. Despite the district court's willingness to listen to specific portions of recordings when Chaney disputed the

corresponding parts of the transcript, there is no evidence in the record that Chaney availed himself of such an opportunity to challenge specific portions.

Finally, we consider Chaney's argument that the jury should not have used the transcripts because the recordings as actually presented at trial were unintelligible and therefore the jury could not meaningfully compare the audio to the transcripts. First, regardless of what transpired at trial, Chaney still had a valid opportunity to prepare a counter-transcript. Furthermore, it is difficult for this court to determine precisely the degree of interference that the court's sound system presented to the jury. The record only tells us that on the first day the judge could understand about twenty words but on the next day the audibility improved. We also do not know how audible the recordings were when they were sent back to the jury room for deliberation. Because the record is not clear regarding this matter and the defendant has offered no alternative method to make this assessment, we thus defer to the discretion of the trial court in making the assessment.

E. Whether the Transcripts Violated the Best Evidence Rule

Finally, we disagree with Chaney that the best evidence rule bars admission of the transcripts. The best evidence rule states that, "[i]n proving the content of a writing, recording or photograph, where the terms of the content are material to the case, the original document must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent, or unless secondary evidence is otherwise permitted by rule or statute." KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE 87 (6th ed. 2006) (footnotes omitted); see also United States v. Duffy, 454 F.2d 809, 811 (5th Cir. 1972). Regarding transcripts and recordings specifically, the United States Court of Appeals for the District of Columbia has noted, "When the original tape is available and presented to the jury and the accuracy of the transcript has been stipulated or is made an issue for the jury to decide, concerns addressed by the

best evidence rule are not at issue." United States v. Holton, 116 F.3d 1536, 1545 (D.C. Cir. 1997). We agree with this reasoning for the purpose of the present case.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment and sentence of the district court.